**UNITED STATES, of America, Plaintiff-Appellee,**

v.

**Leonard Leroy KLEIN and John Warren Utter, Defendants-Appellants.**

**No. 79–2484.**

United States Court of Appeals, Seventh Circuit.

Submitted May 2, 1980.

Decided June 16, 1980.*

Opinion July 17, 1980.

. The panel has decided to issue the decision as an opinion.

John G. Laurie, Chicago, Ill., William L. Kutmus, Des Moines, Iowa, for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER and WOOD, Circuit Judges, and EAST, Senior District Judge.**

SPRECHER, Circuit Judge.

On October 9, 1979, after a bench trial, defendants-appellants were found guilty of knowingly and unlawfully possessing with intent to distribute a Schedule II controlled substance—cocaine—in violation of 21 U.S.C. § 841(a)(1). The cocaine was seized from their suitcases after a search conducted pursuant to a warrant. Defendants appeal from the denial of their pre-trial motion to suppress the cocaine.[1] We hold that the trial court properly denied the motion and we affirm defendants' convictions.

At the hearing on the motion, the parties stipulated to the facts as recited in the affidavit for the search warrant; therefore, we will use those facts in our analysis.

** Honorable William G. East, Senior District Judge, United States District Court for the District of Oregon, is sitting by designation.

1. Defendants also moved to suppress certain other evidence seized from them as well as

## I

▮ Prior to seeking the warrant to search the suitcases defendants were carrying and before formally placing defendants under arrest, Drug Enforcement Administration (DEA) agents stopped defendants for questioning. The agents had earlier been informed by a Broward County, Florida deputy sheriff that two men matching defendants' descriptions had run to an airline ticket counter in Fort Lauderdale Airport and had purchased with cash two one-way tickets to Chicago's O'Hare Airport. The men were carrying identical, unmarked suitcases. Because Florida is a major center for cocaine trafficking and because of what the experienced deputy sheriff deemed to be defendants' suspicious behavior, he alerted the Chicago DEA.

Upon defendants' arrival at O'Hare, DEA agents followed them. Though traveling together, the men separated in the airport, each walking alone toward the same destination. Both men frequently looked over their shoulders and made unexplained diversions from the corridor to the main terminal, finally meeting each other near the United Air Lines baggage check-in. They were still carrying identical, unmarked suitcases.

Based on the aforementioned facts, we hold that although there was no probable cause for an arrest, the initial stop of defendants by DEA agents was well within the scope of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," *Terry, supra*, 392 U.S. at 22, 88 S.Ct. at 1880; that is precisely the situation in this case. See also *U. S. v.*

certain incriminating statements following what the trial court found to be an unlawful arrest; the trial court granted that part of the motion and the Government does not challenge that portion of the ruling.

*Vasquez-Santiago,* 602 F.2d 1069 (2d Cir. 1979); *U. S. v. Rico,* 594 F.2d 320 (2d Cir. 1979); *U. S. v. Smith,* 574 F.2d 882 (6th Cir. 1978); *U. S. v. Chatman,* 573 F.2d 565 (9th Cir. 1977).

 The trial court held, and the Government does not dispute on appeal, that some subsequent activities by the agents were tantamount to an unlawful arrest of defendants, requiring suppression of the fruits of that unlawful arrest.[2] Before the unlawful arrest, however, and as a consequence of the *Terry*-type investigatory stop of defendants, the agents validly obtained some other information that is important to this case. They determined that one of the men was traveling under an assumed name; that both men said they had left their tickets on the plane; and that both men denied having keys to open the locked suitcases they were carrying. These facts coupled with the agents' previous observation of defendants and the information from the Florida deputy sheriff were not enough to establish probable cause, either for an arrest or for a search of defendants' luggage, but were certainly enough to give the agents reasonable suspicion to believe that the suitcases contained contraband.

DEA Agent Labik then told defendants that they were free to go, but that he was going to detain their suitcases while he attempted to get a search warrant. Although subsequent actions by the agents amounted to an unlawful arrest and precluded defendants from leaving the airport, the luggage was not seized incident to that unlawful arrest and therefore cannot be suppressed on that basis.

Nevertheless, we are left with the important question whether probable cause was necessary to *detain* the suitcases, given the fact that no probable cause existed at that point to *search* the suitcases. As mentioned above, in *Terry v. Ohio,* 392 U.S. 1, 92 S.Ct. 1921 (1968), the Supreme Court sanctioned the detention of individuals for further investigation when a police officer had rea-

sonable suspicion to believe something unlawful was afoot. Our research has uncovered no case in which a court has confronted a detention situation precisely like the one before us now, but the Supreme Court did address an analogous situation in *U. S. v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), where it extended the *Terry* logic to the detention of parcels of mail believed to contained contraband.

In *Van Leeuwen,* a postal clerk received for first-class mailing two packages, each weighing twelve pounds, with one addressed to a post-office box in Van Nuys, California and the other to a post-office box in Nashville, Tennessee. Each package was registered and insured for $10,000 and was to be sent airmail. The postal clerk found all these facts suspicious and voiced his suspicions to a policeman who happened to be present. The policeman then noticed that the return address on each package was that of a vacant housing area and that the person who had mailed the packages was driving a car with Canadian license plates.

Because of these suspicious facts, the police detained the packages pending further investigation. By the next day, there was information sufficient to establish probable cause for issuance of a search warrant; a search warrant was obtained, the packages were opened, inspected, resealed and sent on their way.

Recognizing that the parcels in question were first-class mail and therefore free from postal inspection except in accordance with the Fourth Amendment, 397 U.S. at 251, 90 S.Ct. at 1031, the Court nevertheless held that the detention pending further investigation of the packages in that case was justified:

The nature and weight of the packages, the fictitious return address, and the British Columbia license plates of respondent who made the mailings in this border town certainly justified detention, without a warrant, while an investigation was made. . . . The only thing done here on the basis of suspicion was

---

2. See footnote 1, *supra.*

**26**

detention of the packages. There was at that point no possible invasion of the right "to be secure" in the "persons, houses, papers, and effects" protected by the Fourth Amendment against "unreasonable searches and seizures." Theoretically—and it is theory only that respondent has on his side—detention of mail could at some point become an unreasonable seizure of "papers" or "effects" within the meaning of the Fourth Amendment. Detention for 1½ hours—from 1:30 p. m. to 3 p. m.—for an investigation certainly was not excessive; and at the end of that time probable cause existed for believing that the California package was part of an illicit project.

397 U.S. at 252, 90 S.Ct. at 1032.

By the same token, we hold that the detention of the suitcases pending further investigation in this case was not an unreasonable seizure. We are cognizant of the possible difference between the privacy interest in packages surrendered in the mails and that in luggage carried by an individual. However, in this case we believe that defendants' privacy interest in their luggage was adequately protected. In *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Supreme Court elaborated on the scope of an individual's privacy interest in his luggage:

> One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. . . . [T]he very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them.

442 U.S. at 764, 99 S.Ct. at 2593, [footnote omitted].

In a similar vein, the Court in *Van Leeuwen* recognized the great privacy interest in the contents of first-class mail, stating that " 'the use of the mails is almost as much a part of free speech as the right to use our tongues.' " *Van Leeuwen, supra,* 397 U.S. at 251, 90 S.Ct. at 1032, quoting from *Milwaukee Pub. Co. v. Burleson,* 255 U.S. 407,

437, 41 S.Ct. 352, 65 L.Ed. 704 (1921) (Holmes, J., dissenting). The Court went on to say that

> [n]o interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained.

397 U.S. at 253, 90 S.Ct. at 1032. By the same token, defendants' privacy interest in the contents of their suitcases in this case "was not disturbed or invaded until the approval of the magistrate was obtained."

We hold that at the time they decided to detain the bags while waiting for a canine trained in drug detection, the DEA agents had reasonable suspicion to believe that the bags contained contraband; they would have been remiss in not detaining the bags for further investigation. As will be developed more fully in Part II, *infra,* they did not search defendants' luggage until *after* probable cause had been established and *after* they had obtained a search warrant, fully complying with the mandate of *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 253, 61 L.Ed.2d 235 (1979).

## II

Defendants argue further, however, that the use of a dog to sniff the luggage for contraband constituted a search within the meaning of the Fourth Amendment. Since there was still no probable cause to search the luggage at the time the dog sniffed it, defendants argue that the subsequently seized cocaine should be suppressed. We disagree.

There is abundant authority holding that the use of canines to sniff inanimate objects for contraband does not constitute an unlawful search within the meaning of the Fourth Amendment. See, e. g., *U. S. v. Solis,* 536 F.2d 880 (9th Cir. 1976); *U. S. v. Race,* 529 F.2d 12, 14 n.2 (1st Cir. 1976); *U. S. v. Venema,* 563 F.2d 1003 (10th Cir. 1977); *U. S. v. Bronstein,* 521 F.2d 459 (2d

Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *U. S. v. Fulero,* 498 F.2d 748 (D.C.Cir.1974).

In their brief, defendants state that the district court in *U. S. v. Solis,* 393 F.Supp. 325 (C.D.Cal.1975), held that the use of a dog constituted a search requiring probable cause, and they urge us to do the same. However, that district court decision was overruled in *U. S. v. Solis,* 536 F.2d 880 (9th Cir. 1976), and can offer no comfort to defendants in this case.

This is not a case in which we need confront the thorny problem of an indiscriminate, dragnet-type sniffing expedition. Rather, this is a case in which authorities already had a reasonable suspicion to believe that the luggage contained contraband and used a dog as a further investigatory device. When the dog alerted the authorities to defendants' luggage, probable cause for issuance of a warrant was then established.

Defendants urge that if we conclude, as we do, that the use of a trained dog is not a search, we should nevertheless find the affidavit supporting the warrant to be fatally deficient for not specifying the dog's reliability as a drug detector under the second prong of the informant test in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We find sufficient, however, the affiant's representation to the magistrate that the dog "graduated from a training class in drug detection in October 1978" and "has proven reliable in detecting drugs and narcotics on prior occasions." Affidavit for Search Warrant at 9. See *U. S. v. Venema,* 563 F.2d 1003, 1007 (10th Cir. 1977).

### III

We hold that the facts recited in Part I, *supra,* which gave rise to a reasonable suspicion justifying the detention of the luggage, coupled with the canine's alerting to defendants' two suitcases, created probable cause for issuance of a search warrant. Accordingly, we affirm the judgment below.

AFFIRMED.