UNITED STATES OF AMERICA
vs.
Peter R. JODOIN

Cri. No. 80-273-S

United States District Court
D. Massachusetts

January 16, 1981

John LaChance for the plaintiff.
John McBride for the defendant.

## MEMORANDUM AND ORDER

**SKINNER, D.J.** Defendant Peter Jodoin is charged with possession of a controlled substance, cocaine, in violation of 21 U.S.C. § 841(a)(1). The case is presently before me on defendant's motion to suppress evidence. Evidentiary hearings on this motion were held on October 22 and December 15, 1980.

At approximately 5:42 p.m. on August 7, 1980, Officers Richard Riggio and Vicki Callahan of the Broward County Sheriff's Department, Broward County, Florida, observed a man later identified as Peter Jodoin alight from a cab in front of the

Delta Airlines terminal at the Fort Lauderdale-Hollywood International Airport. Defendant proceeded hurriedly into the terminal, carrying a large white suitcase and a small gray plastic bag. Officers Riggio and Callahan, who were working undercover on the airport narcotics detail, followed defendant into the terminal. At the ticket counter, defendant produced a ticket and requested to be placed on Flight 326 bound for Boston. He was told that the flight was scheduled to depart at 5:45 p.m. and that he would have to hurry in order to catch the plane. Defendant checked his white suitcase, and subsequently ran toward the gate area where he boarded Flight 326.

Officers Riggio and Callahan testified that defendant appeared nervous in the terminal and continually turned his head to observe them, even while he was running toward the gate. After defendant left the terminal area, they performed a routine examination of his ticket history, and his recent whereabouts in Fort Lauderdale. They discovered that (1) defendant's airline ticket, paid for in cash, was issued to one "Paul Harper"; (2) defendant had not given Delta Airlines a telephone number at which he could be reached; (3) defendant was scheduled to depart from Boston on August 7 with an open return from Fort Lauderdale; (4) defendant, in fact, left Boston in the late evening of August 6 on Flight 277, arriving in Fort Lauderdale at 1:05 a.m. on August 7; (5) defendant picked up his cab to the Fort Lauderdale airport for the return flight to Boston in front of the Howard Johnson's Hotel at Fort Lauderdale Beach; and (7) no one registered under the name Harper stayed at the Howard Johnson's Hotel during this period.

On the basis of this information, Officers Riggio and Callahan suspected defendant of being a drug courier. They testified that defendant exhibited several characteristics of the "drug courier profile" for the Fort Lauderdale Airport.[1]

At approximately 6:30 p.m. on August 7, Officer Riggio telephoned the Boston office of the Drug Enforcement Agency [DEA]. He informed Agent Roger Marchand of everything he knew about defendant. Along with Agents Dever and Keaney, Agent Marchand proceeded to the Delta Airlines terminal at Logan Airport to await the arrival of Flight 326 from Fort Lauderdale.

At approximately 8:45 p.m. defendant arrived in Boston on Flight 326. Agent Marchand testified that defendant appeared nervous as he walked toward the baggage carousel and waited for his luggage, continually scanning the area around him. Defendant picked up a white suitcase from the carousel and proceeded through the baggage security personnel. At this point, Agents Marchand, Dever and Keaney, approached defendant. Agent Marchand identified himself as a DEA agent and asked defendant if he could speak to him for a few moments, to which defendant replied "Sure". Marchand then asked defendant for his name. Defendant said that it was "Peter Jodoin", not Paul Harper as the ticket history indicated. When requested to produce his ticket, defendant said that he did not have it. Defendant was also unable to provide any identification. Agent Marchand next asked defendant whence he had come. Defendant replied that he had been staying in Fort Lauderdale for several days with friends. This, too, contradicted the ticket history. Agent Marchand then asked defendant whether the white suitcase he was carrying was his, to which defendant at first replied "I don't know", and subsequently "It's not mine." Marchand inquired if defendant was carrying any clothing. Defendant responded that he had left his clothes in Fort Lauderdale with friends. Finally, when asked whether he would

---

[1] This profile is an informal list of characteristics typically exhibited by persons carrying narcotics in airports. Officers Riggio and Callahan testified that at the Fort Lauderdale Airport, the profile was comprised of the following characteristics: (1) presence of the defendant in a "source city", i.e., a major center of drug trafficking; (2) having an unusual itinerary, e.g., spending a short period of time in the source city: (3) paying for a ticket in cash; (4) leaving a false telephone number with the airline; (5) traveling under an alias; (6) arriving at the airport immediately prior to the flight's scheduled departure; (7) carrying little or no luggage; (8) displaying unusual nervousness in the airport; and (9) making telephone calls immediately before boarding. Officer Callahan testified that the profile may differ from airport to airport. Compare, United States v. Mendenhall, 48 U.S.L.W. 4575, 4576 n.1 (May 27, 1980).

consent to a search of the suitcase, defendant said that he would not.

A break in the conversation occurred at this moment. Defendant then picked up the white suitcase and proceeded outside the terminal toward the cab stand, followed closely by the three agents. Prior to defendant's entering a cab, Agent Marchand asked him if he would continue the conversation at the airport DEA office. Defendant replied that he would. He also asked Marchand whether he was under arrest and if he could see his lawyer. Marchand replied that defendant was not under arrest and that a telephone would be made available to him at the DEA office to call his attorney.

At the DEA office, defendant reiterated his refusal to consent to a search of the suitcase. The agents then told him that they were attempting to have a drug detection dog brought to the office to sniff the luggage. When the agents later learned that no dogs were available, they told defendant that he was free to go, but that his suitcase would be detained until a detector dog was found.

Defendant spent a total of approximately twenty minutes at the DEA office. The agents did not physically touch him during this period. They did not give him a **Miranda** warning.

The next day, a detector dog sniffed defendant's suitcase but failed to sense any narcotics. On August 11, Agent Keaney obtained a warrant to search the suitcase on the basis of all this information, plus an informant's tip that defendant had associated with known drug dealers. Approximately four pounds of cocaine were discovered in the suitcase. Defendant was subsequently arrested.

Defendant now moves to suppress the quantity of cocaine seized by the DEA agents. In support of this motion, he presents three arguments based on the Fourth Amendment. First, defendant claims that the DEA agents' initial contact with him at Logan Airport was a "seizure" and that they lacked reasonable grounds to make such a stop. Second, he contends that the detention of his suitcase at the DEA office pending procurement of a drug detector dog was an unreasonable seizure of property. Third, he argues that the warrant to search

the suitcase was issued without probable cause. With respect to all three arguments, defendant contends that the discovery of the cocaine was a direct "fruit" or by-product of the unreasonable government action. The government contests these arguments as well as defendant's standing to challenge the search of the suitcase.

Defendant also moves to suppress any statements he made to DEA agents at Logan Airport. As grounds, he asserts that the agents violated his rights under **Miranda v. Arizona**, 384 U.S. 436 (1966), and the Sixth Amendment by failing to warn him that he had a right to remain silent and right to the assistance of counsel.

## I. Standing

In order to have standing to challenge the search, defendant must show that he had a "reasonable expectation of privacy" in the suitcase. **United States v. Salvucci**, 48 U.S.L.W. 4881, 4884 (June 25, 1980); **Katz v. United States**, 389 U.S. 347, 361 (1967) (Harlan, J. concurring). The government notes that this is a change from prior standing doctrine under the Fourth Amendment. Previously, a person charged with a possession offense had "automatic standing" to challenge the legality of a search which produced the incriminating item. See, **Jones v. United States**, 362 U.S. 257 (1960). In overruling this aspect of **Jones**, the Supreme Court in **Salvucci** shifted the inquiry in these cases from whether defendant possessed the seized item to whether he had an expectation of privacy in the area from which the item was seized. **Salvucci, supra,** at 4883-84.

The government asserts that Jodoin's denial that he owned the white suitcase may deprive him of standing to challenge the search. Jodoin testified that not only was the suitcase not his, someone other than him placed the cocaine inside it in Florida and he had had no plans to open the suitcase himself upon his return to Boston.

This denial of ownership, however, does not deprive defendant of standing. Defendant was in legal possession of the suitcase at the time of the search. He had access to its contents and took normal precautions to maintain his privacy. Under the circum-

stances, defendant had a reasonable expectation that the suitcase would remain free from governmental intrusion. See, Rawlings v. Kentucky, 48 U.S.L.W. 4885, 4887 (June 25, 1980); United States v. Jeffers, 342 U.S. 48 (1951) (defendant has standing where he has a possessory interest in both the premises searched and the property seized, cited in Rakas v. Illinois, 439 U.S. 128, 135-36 (1978) ).

## II. The Encounter at Logan Airport

Defendant argues that the DEA agents' initial contact with him at Logan Airport constituted an unreasonable seizure of his person in violation of his Fourth Amendment rights. The government counters that no seizure took place and, in any event, the agents had ample grounds to conduct an investigative detention.

A person is "seized" within the meaning of the Fourth Amendment when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen" so that he is not free to walk away. Terry v. Ohio, 392 U.S. 1, 16, 19 n. 16 (1968); United States v. Viegas, Slip Op. at 4 (1st Cir., January 8, 1980). The test is an objective one, i.e., would a "reasonable person" believe under the circumstances that he is not at liberty to leave. United States v. Mendenhall, 48 U.S. L.W. 4575, 4578 (May 27, 1980); United States v. Viegas, supra at 3.

Once it has been determined that a person has been seized, the inquiry turns to whether the seizure was "reasonable." The Court of Appeals described the reasonableness inquiry in Viegas, supra at 5:

> Whether a particular police action is reasonable "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Delaware v. Prouse, 1979, 440 U.S. 648, 654 and cases cited. This latter, in turn, depends upon the officer's ability "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, ante, 392 U.S. at 21. In determining which inferences are rational, due credit must be given to the experience and expertise of the officers. Mendenhall, ante, 48 U.S.L.W. at 4581 (Powell, J., concurring); Brown v. Texas, 1969, 443 U.S. 47, 52 n.2: Brignoni-Ponce, ante, 422 U.S. at 885.

I find that the defendant's liberty was not restrained. Even if the circumstances of this case would warrant a finding of a sufficient level of intimidation to constitute the legal equivalent of restraint, I find and rule that the officers' conduct was reasonable and that they had reasonable grounds for suspicion justifying whatever brief interference with the defendant's liberty that occurred. United States v. Viegas, supra.

## III. The Overnight Detention of the Suitcase

Defendant argues that the overnight detention of the white suitcase by the DEA agents at Logan Airport was a "seizure", and that the agents lacked reasonable suspicion to detain the bag.

The Court of Appeals has held that a temporary detention of a suitcase is governed by the same standard as a temporary detention of a person, i.e., the agents must have reasonable suspicion. United States v. Viegas, supra at 6; see United States v. Klein, 626 F.2d 22, 25-26 (7th Cir. 1980)

For the reasons discussed in Section II, supra, I conclude that the agents had reasonable grounds to detain the suitcase for further investigation.

## IV. The Search Warrant

Defendant challenges the search warrant for the suitcase on the grounds that there was no probable cause to believe that the suitcase contained cocaine. In particular, defendant argues that the informant's tip in the supporting affidavit lacks sufficient indicia of reliability to be of any probative weight and that the remaining information in the affidavit does not establish probable cause.

The reliability of the informant's tip need not be considered in this case because Agent Keaney's affidavit supports a finding of probable cause without it. In addition to the facts that the agents knew when they

first approached defendant, see Section II, supra, the affidavit recites facts that the agents learned during their encounter with him. These latter facts are as follows: (1) defendant was traveling under an alias; (2) he lied about the duration of his trip to Fort Lauderdale; and (3) he told the agents, first, that he did not know who owned the white suitcase, and later, that it was not his. Taken together with the other information in the affidavit, these facts give rise to probable cause to believe that the suitcase contained illegal narcotics. I therefore hold that the warrant was issued on probable cause.

### V. Oral Statements

Defendant argues that any oral statements he made to the DEA agents were obtained in violation of his rights under **Miranda v. Arizona, supra,** and the Sixth Amendment.

**Miranda** requires the police to provide a warning of certain constitutional rights prior to conducting a custodial interrogation. The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." **Id.** at 444.

In the present case, the DEA agents did not give defendant a **Miranda** warning. I find and rule, however, that defendant was not taken into custody or deprived of his freedom of action in any significant way. Accordingly, the agents' conduct did not violate **Miranda.**

The Sixth Amendment requires the police to warn an individual, at the time they begin to focus on him as the accused, of his constitutional right to remain silent. **Escobedo v. Illinois,** 378 U.S. 478 (1964). As with **Miranda,** this right applies only to one who is in police custody. **Id.** at 490-91. Because the DEA agents did not take defendant into custody at Logan Airport, defendant's Sixth Amendment rights were not violated.

Accordingly, defendant's motion to suppress is DENIED.

**Walter Jay Skinner**
**U.S. District Judge**