**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Maurice BENJAMIN,**
**Defendant-Appellee.\***

**No. 80–2143.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1981.

Decided March 26, 1981.

---

\* *Editor's Note:* The opinion of the United States Court of Appeals, Ninth Circuit in Harriss v. Pan American World Airways, Inc., published in the advance sheets at this citation (637 F.2d 1297), was withdrawn from bound volume at the request of the Court.

Thomas P. Sullivan, U. S. Atty., Julian Solotorovsky, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

John J. Enright, Chicago, Ill., for defendant-appellee.

Before BAUER, Circuit Judge, KUNZIG, Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an interlocutory appeal by the United States government of an order granting a motion for the return of a briefcase seized during the arrest of Maurice Benjamin. We find that the FBI agents arresting Benjamin had a reasonable suspicion to believe that the briefcase contained evidence of the underlying crime. Accordingly, we reverse the district court decision and deny the motion.

Maurice Benjamin is under investigation by a federal grand jury in the Southern District of New York and by the Commodities Futures Trading Commission (CFTC) for activities in connection with Pyne Commodities Corporation. Pursuant to these investigations, FBI agents conducted a search of Benjamin's New York City residence and uncovered notebooks showing activity in bank accounts in his name and in the names of entities under his control. On

July 11, 1980, the CFTC obtained a temporary restraining order providing for a "freeze of the assets of . . . [Maurice] Benjamin . . . prohibiting [him] from withdrawing, transferring, removing, dissipating or disposing of any assets or property in [his] possession or control or on deposit at any bank, savings and loan, trust company, credit union, brokerage firm or any other financial or brokerage institution whereever [sic] situated." Benjamin was notified of the temporary restraining order on July 12, 1980.

On July 15, 1980, Benjamin withdrew $20,000 from an account located at the Des Plaines Bank in Des Plaines, Illinois. FBI Special Agent Daniel Bodine was informed of this transaction and of the fact that Benjamin was scheduled to return to the Des Plaines Bank the next day to cash a check for $100,000. On these facts, a complaint was presented and an arrest warrant issued in New York on July 16, 1980, charging Benjamin with violations of 18 U.S.C. §§ 1503 and 1505 for obstructing justice.

The FBI agents in Chicago were informed of the issuance of the arrest warrant and, on that same day, proceeded to the Des Plaines Bank. There they observed Benjamin as he entered the bank with his secretary, Nancy Smith. He carried nothing into the bank, but had a manila envelope in his hands when he left. Benjamin and Smith walked together toward Smith's automobile. Benjamin was in the process of reaching toward the car door to open it when the FBI agents stopped him. He was arrested by Agent Bodine, and asked to place his hands and the manila envelope on top of the car. A search of Benjamin's coat and person revealed that Benjamin was not carrying the $20,000 withdrawn the day before.

After Agent Bodine handcuffed Benjamin and placed him in the government automobile, Bodine returned to Smith's car. Bodine testified that this was done within

* The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation.

the space of four to five minutes and that the distance between the two cars was about 10 yards. From Smith, Bodine learned that she had driven Benjamin to the bank and that from the bank, she planned to drive Benjamin and his son, who was in the back seat of the car, to the airport to return to New York. At that time, the agents asked if the briefcase in the back seat of the car was Benjamin's. When Smith identified it as his, the agents took it into their possession.[1]

They placed the briefcase in the government automobile and drove Benjamin and the briefcase to the FBI headquarters in Chicago. Benjamin's request for its return was denied, but his attorneys were permitted to open the briefcase and remove Benjamin's keys, wallet, credit cards, airplane tickets and driver's license. It was then re-locked without examination of its contents by the government.

The following day, July 17, 1980, Benjamin brought a Motion to Quash and for the Return of Property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure,[2] alleging that the seizure of the briefcase was illegal. Application for a search warrant was stayed by the court until the motion was ruled on.

Beginning July 18, 1980, hearings were held on the question of the propriety of the seizure. It was brought out at that time that Benjamin had elected to have his probable cause hearing in the Southern District of New York rather than in the Northern District of Illinois. It was agreed that the validity of the underlying arrest would be left for that proceeding and that the hearing would be confined to probable cause as it related to the seizure of the briefcase.

The district court initially denied the motion, but upon reconsideration, granted the motion and ordered the briefcase returned. The government then informed the court that it intended to appeal the ruling. The court subsequently entered an order staying the return of the briefcase pending resolution of this appeal.

Initially, we must deal with the issue of the propriety of this appeal which is raised by the appellee. Under 18 U.S.C. § 3731, an appeal may be made to the court of appeals from an order of a district court "surrounding or excluding evidence or requiring the return of seized property . . . if the United States Attorney certifies to the court that the appeal is not taken for the purpose of delay and that *the evidence is a substantial proof of a material fact in the proceeding.*" 18 U.S.C. § 3731 (emphasis added).

The original certification of the United States Attorney indicated only a *belief* that the briefcase may contain such evidence. This court granted leave to the district court to consider the government's Motion for Leave to File an Amended Certification which states that the evidence *is* a substantial proof of a material fact in the proceeding is the object of a motion to this court to dismiss the appeal.

■ Appellee contends that the government can only speculate about the contents of the briefcase since it was never opened. Therefore, the requisite certification for appeal cannot logically be made.[3] However,

---

1. The question of whether or not it was given to the FBI agents by Nancy Smith is irrelevant since it is not contended that the seizure was consensual.

2. Rule 41(e) provides in part:
   Motion for Return of Property. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property, which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial.

3. The argument that the government admitted in its brief that it would only be speculating about the contents of the briefcase is without merit since at the time of the amendment it was clear that the government had knowledge of Benjamin's admission as to the contents of the briefcase.

the United States Attorney attached as support for the amended certification a letter from an Assistant United States Attorney from the Southern District of New York. That letter included a reference to Benjamin's "admissions that receipts relating to the July 15 transaction are presently in the briefcase." Since the United States Attorney knew that these receipts were in the briefcase when he made his amended certification, the issue is resolved. The certification is not only correct, but amply supported. The motion to dismiss this appeal is denied.

We now turn to the legality of the seizure of the briefcase. It is not for us to decide the issue of probable cause as it relates to the arrest and therefore we will not address questions pertaining to the validity of the arrest warrant. These issues must be left for the hearing on probable cause to be held in the Southern District of New York, the jurisdiction from which the arrest warrant emanated. Accordingly, we will assume that the arrest was lawful and focus our attention on the legality of the seizure of the briefcase.

The Supreme Court delineated the permissible scope of searches incident to a lawful arrest in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel*, police officers conducted a search of the entire house in which the defendant was arrested. The Supreme Court limited the permissible search to the person arrested and the area within his reach, reasoning that such a search was necessary to protect (1) the arresting officers from hidden weapons and/or (2) evidence of the crime which might be destroyed. *Id.* at 766, 89 S.Ct. at 2041. A more extensive search, then, would require the officer to obtain a search warrant based on probable cause.

Appellee argues that this case disposes of the issue here on appeal: since the briefcase was not within Benjamin's reach, it cannot be seized under *Chimel*. *Chimel* involved an unfounded search of the inside of an entire home of an individual. Our situation, in contrast, involves the seizure of a briefcase lying in plain sight in the back of an automobile. The analysis cannot stop with *Chimel*.

In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court decided the issue of whether a footlocker could be removed from an automobile and searched by the police without a warrant. While the legality of the initial seizure was not challenged, the Court made clear that seizure is not equivalent to search: "Respondent's principal privacy interest in the footlocker was, of course, not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker." *Id.* at 13–14 n.8, 97 S.Ct. at 2484, 2485 n.8. Thus, we cannot mechanically apply the limitations on search imposed by the *Chimel* Court to our situation where the container was impounded, but not opened, pending a determination of probable cause by a magistrate.

The purpose of the Fourth Amendment "is to safeguard individuals from unreasonable government invasions of legitimate privacy interests...." *United States v. Chadwick*, 433 U.S. at 11, 97 S.Ct. at 2483. We must examine the totality of the circumstances to determine whether the actions of the FBI were unreasonable given the somewhat lesser privacy interest involved in mere detention.

While not squarely addressing the issue of what is necessary to detain a "container" before obtaining a search warrant, the Supreme Court decision in *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1969), is instructive. In *Van Leeuwen*, the Court considered the detention of two packages at a post office in a town located near the Canadian border pending the issuance of a search warrant. The packages had been received by a postal clerk for mailing under suspicious circum-

stances. They weighed 12 lbs. each and were registered and insured for $10,000, the owner having explained that they contained coins. The return address on each was a vacant housing area around a junior college. The owner's automobile license plates were Canadian. Postal authorities detained the packages while the police investigated the circumstances. They found that the addressees were both under investigation for trafficking in illegal coins. Subsequently, a search warrant was issued and the packages opened. The Supreme Court held that the 29-hour detention, on the facts of the case (noting the suspicious character of the mailings and the likelihood of difficulty in locating them later), was not unreasonable within the meaning of the Fourth Amendment.

Although our issue is not the reasonableness of the delay in obtaining a search warrant as was the case in *Van Leeuwen*, the Court's analysis supports the conclusion that the detention of the briefcase may be permissible where there is a reasonable suspicion to believe it contains contraband.

This court applied the teachings of *Van Leeuwen* to a fact situation somewhat closer to our own in *United States v. Klein*, 626 F.2d 22 (7th Cir. 1980). In *Klein*, two men carrying identical, unmarked suitcases ran into the Fort Lauderdale, Florida, airport [4] and purchased by cash two one-way tickets to Chicago. Upon arrival at O'Hare Airport, they separated and, frequently looking over their shoulders and making unexplained diversions from the main route, proceeded to the check-in area. Drug Enforcement Administration (DEA) agents, alerted of their impending arrival, questioned the two men during a *Terry*-type investigatory stop.[5] The two men were travelling under assumed names and both denied having keys to the locked suitcases. The DEA agents allowed the two men to leave, but kept the two suitcases while attempting to obtain a search warrant.

In *Klein* we held that the detention of the two suitcases was permissible since there was "reasonable suspicion to believe that the suitcases contained contraband." This somewhat lower standard would not require the showing necessary to constitute probable cause to search the suitcases. Thus, under *Klein*, the question to be answered is whether there was reasonable suspicion to believe that Benjamin's briefcase contained contraband or evidence of a crime. We believe that there was.

The FBI agents knew that a transaction had taken place on July 15, 1980, at the Des Plaines Bank in which Benjamin cashed a check for $20,000. This transaction triggered the arrest warrant issued on July 16 and executed that same day. The $20,000 and receipts for that transaction were not on Benjamin's person or in his coat. Benjamin had arrived in Chicago shortly before the first transaction and was scheduled to leave immediately after the second withdrawal of $100,000. The briefcase owned by Benjamin was the only article of luggage observable. His wallet, keys, credit cards and airplane tickets were not carried by Benjamin on his person. All of this leads to a reasonable suspicion that the briefcase was used by Benjamin as a repository for his personal papers and that these papers include evidence of the July 15, 1980, transaction. In light of this reasonable suspicion, the FBI agent's actions in impounding the briefcase did not violate Benjamin's Fourth Amendment rights.

Like the packages in *Van Leeuwen* and the suitcases in *Klein*, the briefcase was a portable container which, if not impounded at the time of Benjamin's arrest, would likely have been lost as evidence. It would certainly have been taken away in Smith's

---

**4.** Florida is known to be a major center for illegal drug trafficking.

**5.** In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court sanctioned an initial stop by police for the purpose of investigating possible criminal behavior even though there was no probable cause to make an arrest.

automobile and may have even been taken from the jurisdiction by Benjamin's son or secretary. The Court in *Van Leeuwen* found detention of the packages a "prudent act" which did not infringe on their owner's Fourth Amendment rights. Likewise, we feel that the FBI proceeded in the best way possible to protect both Benjamin's right to privacy and the government's access to potentially valuable evidence.

For the foregoing reasons, the district court order granting appellee's Motion to Quash and for the Return of Property is hereby REVERSED.