In re NATIONAL AIRLINES, INC., Maternity Leave Practices and Flight Attendant Weight Program Litigation.

Susan Gail LEONARD, on behalf of herself as an Individual, and on behalf of all others similarly situated, Plaintiffs,

v.

NATIONAL AIRLINES, INC. and Airline Pilots Association International, Defendants.

MDL No. 218 and No. 75–719–Civ–NCR.

United States District Court,
S. D. Florida.

April 26, 1977.

Donald J. Parker, Gann, McIntosh, Flaherty & Parker, Chicago, Ill., and Gerald M. Walsh & Associates, P. A., Fort Lauderdale, Fla., for Susan Gail Leonard, plaintiff.

Steel, Hector & Davis by Barry R. Davidson, John Barkett, and John M. Lindsey, Vice Pres. & Gen. Counsel, Miami, Fla., for National Airlines, Inc., defendant.

O'Donnell & Schwartz by Asher W. Schwartz, New York City, Dubbin, Schiff, Berkman & Dubbin by Alan C. Greenfield, Miami, Fla., for Transport Workers Union, defendant.

Cohen, Weiss & Simon, New York City, and Manners & Amoon, P. A., Miami, Fla., for Air Line Pilots Assoc. International.

Schwartz & Klein, P. A., North Miami Beach, Fla., for Barbara Baker Johnson.

Robert B. Wallace, Alexandria, Va., and Donald B. Myers, Washington, D. C., for Barbara Ann Gardner, Sherry Knipple and Marilyn White.

Martin Zevin, Ft. Lauderdale, Fla., for Dorothy Zevin.

## MEMORANDUM OPINION

ROETTGER, District Judge.

### PROCEDURAL HISTORY

This case is part of the consolidated litigation involving National Airlines' maternity leave practices and weight program.[1] This opinion deals solely with the weight limitation or "height-weight program", and supplements the findings and conclusions announced from the bench at the close of the evidence on February 21, 1977. The court's findings and conclusions with respect to the issue of National's maternity leave practices is reported separately. *Gardner v. National Airlines, Inc.*, 434 F. Supp. 249 (S.D.Fla.1977).

Susan Gail Leonard brought suit against National Airlines and its flight attendants' collective bargaining representative complaining that she was terminated following the birth of her child because of her inability to return from maternity leave at or below the maximum weight limitation imposed on her by National. Plaintiff alleged that this weight limitation policy discriminated against females in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* Declaratory, injunctive and monetary relief were sought by plaintiff for herself, and in behalf of a class of female flight attendants who were asserted to be similarly situated.

This court previously concluded that plaintiff timely filed her charge of discrimination within the 180 day period following the occurrence of the allegedly discriminatory act. 42 U.S.C. § 2000e–5(e). Likewise, the complaint herein was filed within 90 days after receipt of notice of right to sue. 42 U.S.C. § 2000e–5(f). It is undisputed that defendant National Airlines, Inc. is an "employer" as defined in 42 U.S.C. § 2000e(b), and that the Transport Workers Union (TWU)[2] is a "labor organization"

within the meaning of 42 U.S.C. § 2000e(c). Plaintiff has alleged that National's height-weight program violates 42 U.S.C. § 2000e–2(a)(1) and that the Union's collective bargaining agreement is in violation of 42 U.S.C. § 2000e–2(c)(3).

On July 15, 1976, this court certified a class of female flight attendants, pursuant to Rule 23(b)(2), Fed.R.Civ.P., composed of:

> "Female flight cabin attendants who have been employed by National Airlines, Inc. on or after March 3, 1973, or who may become so employed in the future."

This part of the consolidated litigation was severed at the final pretrial conference held on January 25, 1977, and the issues of liability and damages were bifurcated.

### FINDINGS OF FACT

Ms. Leonard was employed by National Airlines as a stewardess[3] in November, 1968, and at the time of her employment was 5′8″ tall and weighed 143 pounds. During the training period she requested that her maximum weight be increased from the 137 pounds previously assigned to her. As a result of her request, she was afforded a consultation with the Director of Training and her maximum weight was increased to 142 pounds. Her individual weight record (plaintiff's exhibit 32) indicates that she began flying with monthly weights of 141, 140, 141 and 142. For the next several months she never weighed in at or below her maximum assigned weight of 142 pounds. It was nine months later when Ms. Leonard again reduced her weight to the maximum of 142 pounds. The record reveals that on only two occasions after her first four months of flying did she make her maximum weight, but she was never disciplined by National as a result.

In August of 1972, plaintiff went on sick leave and while on leave discovered that she was pregnant. Thereafter she awaited the

---

1. See *In re National Airlines, Inc. Maternity Leave Practices and Flight Attendant Weight Program Litigation*, 399 F.Supp. 1405 (Jud.Pan. Mult.Lit.1975).

2. See note 4, *infra*.

3. For the sake of brevity, the terms "steward" and "stewardess" are employed interchangeably with "male flight attendant" and "female flight attendant".

birth of her child on maternity leave; the birth occurred on April 13, 1973.

The flight attendants were parties to a letter of agreement with National Airlines. At the time of plaintiff's employment the labor union representing the flight attendants was the Airline Pilots Association (ALPA)[4] and the agreement with National in substance required that a stewardess return to work within 60 days after the birth of her child. The agreement further provided that the stewardess must return to work at or below her maximum assigned weight. Ms. Leonard's 60 days expired on June 13, 1976. On July 1, she wrote to National requesting an extension of her maternity leave. She explained that she wished to fly again and revealed that she was still 17 pounds over the maximum weight of 142. National's then Director of Flight Attendants subsequently advised Ms. Leonard that her letter was not received until July 5, and that because she had not been in contact with the company within 60 days following the birth of her child, as well as her overweight status, her employment was terminated effective at once.

National is one of the smaller of the trunk carriers in the United States, employing about 1225 female flight attendants and approximately 75 male flight attendants. The first male flight attendant was not hired until April 6, 1973. Over the years only one flight attendant has been terminated[5] and 25 have been suspended for failure to comply with the maximum weight requirements.

National's weight policy is unique among the airlines. It is determined on an individual basis after an interview between the flight attendant and the Flight Attendant Supervisor. The interview is conducted during the training period and a maximum weight is established at that time following a discussion of a number of factors:

1. Is the flight attendant on a diet?
2. What has been the maximum weight as an adult?
3. Has there been any recent illness affecting weight?
4. Has there been any recent change of weight for whatever reason?
5. Is the flight attendant in good health at the time?
6. What was the weight of the flight attendant at the time of employment?

National's Flight Attendant Supervisor then considered the body frame of a flight attendant and established a maximum weight for each individual.

In 1971 National produced a brochure containing a height-weight chart but it was never adopted verbatim as policy. National sometimes considers the brochure's figures along with the factors previously listed in determining the maximum weight to be assigned to an individual flight attendant. The evidence indicated that other airlines utilize a table indicating the weight for persons of various heights and body types, not unlike the ones that appear on the free scales usually located in bank lobbies.

National's policy permits its flight attendants to request an adjustment of their maximum assigned weights. The testimony is uncontradicted and strongly supported by the documentary evidence that several flight attendants have received repeated increases in their maximum weight.[6] The

4. ALPA was joined as a party defendant but was replaced prior to trial by the Transport Workers Union (TWU), which became the flight attendants' certified bargaining representative on August 18, 1976.

5. Ms. Leonard apparently was the sole flight attendant terminated for failure to comply with the weight requirements. Although the evidence is not entirely clear on this matter, apparently she was terminated both for failure to report back to work within 60 days after the birth of her child as required by the maternity

leave policy in the collective bargaining agreement and for her overweight status.

6. The court has examined in detail the first 20 pages of the 40 page exhibit containing the maximum weight records of all the flight attendants on active status in order to determine the frequency of requests for weight increases and the extent of the increases granted (plaintiff's exhibit 27). The exhibit excludes the active flight attendants who attended the most recent training classes. Review of 615 flight attendants' records indicates that 207 flight at-

evidence further shows that a number of flight attendants have received an increase after having previously been turned down.

National's flexible policy is also evident with respect to its administration of the return from maternity leave component. As previously indicated, all stewardesses must return to work at or below their assigned maximum weight within 60 days after the birth of her child. However, when a timely request for extension is made, supported by medical justification detailed by a flight attendant's personal physician, National routinely and automatically grants the requested extension. The evidence was uncontradicted that plaintiff's request for extension would have been granted if it had been made prior to June 13, 1973.

No evidence was introduced regarding the effect of the weight policy on any member of the class other than the named plaintiff. While approximately two dozen female flight attendants have been suspended or otherwise disciplined as a result of weight infractions, the evidence did not indicate what proportion, if any, of those disciplined were class members. There is no evidence whether any male flight attendants were disciplined for failure to comply with National's weight policy. This may well be due to the fact that National suspended enforcement of the policy in November of 1974, during the pendency of this litigation.

■ The evidence did reveal that male flight attendants were subjected to weight limitations and weight checks similar to those imposed upon the stewardesses. Thus, this case is unlike the situation in *Laffey v. Northwest Airlines, Inc.*, 366 F.Supp. 763, 774 (D.D.C.1973), *aff'd in part*, No. 74–1791 (D.C.Cir. Oct. 20, 1976). Moreover, as National did not employ male flight attendants prior to April of 1973, any evidence of discipline or discriminatory application occurring prior to that date would be immaterial. See *Stroud v. Delta Airlines, Inc.*, 544 F.2d 892 (5th Cir. 1977).

■ There was no direct evidence from which this court might conclude that National Airlines purposefully intended its height-weight policy to be invidiously applied to females. Thus, the evidence introduced was directed at a showing of discriminatory impact. See *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Plaintiff asserts that the statistical evidence introduced supports her claim of discriminatory treatment in National's maintenance of height-weight requirements. Statistics alone, in certain cases, are sufficient to sustain plaintiff's burden of proof under Title VII. *Sabala v. Western Gillette, Inc.*, 516 F.2d 1251 (5th Cir. 1975). (The court described the statistical evidence as "impressive". *Id.* at 1262); *Robinson v. City of Dallas*, 514 F.2d 1271 (5th Cir. 1975).

Studies were introduced by plaintiff of the height-weight comparisons of the male and female population as prepared by HEW in 1962 and National Insurance Underwriters. Judge Crary in a recent height-weight decision observed that

" . . . such standards need not be governed by a comparison to general national averages of male and female weights at given heights and ages. The most recent national data available is approximately 14 years old and includes individuals without regard to whether or not such individuals are employed, are required to have substantial public contact with customers in a regulated industry, are in good health, previously met weight standards or other factors present in and relevant to the Flight Attendants classification."

*Gerdom v. Continental Airlines*, No. 72–663–EC (C.D.Cal. Sept. 22, 1976) (Slip Opinion at 7–8). This court must discount heavily such studies by HEW and National In-

tendants obtained an increase, 30 of which range from seven to thirteen pounds. Additionally, 41 have obtained two or three increas-

es, 12 of which range from ten to eighteen pounds.

surance Underwriters because they are not restricted to young, healthy, good looking men and women who are employed to be in close contact with customers under sometimes trying conditions and who have met certain weight standards at the time of their employment.

The court observed that a comparison of the HEW study with National's statistics show the only interface between the male and female employees is in the range of 66 to 68 inches in height. In that area there is little difference between the HEW standards and the mean weight differences calculated for National's male and female flight attendants.[7]

Plaintiff's expert, a statistician, testified there was an average difference between the mean maximum weight of male and female flight attendants at National of 24.5 pounds and a difference between adjusted maximum weights of 23.6 pounds. The court notices that in the national health studies the mean average weight differential between the sexes of 68″ height (plaintiff's) is 21 pounds.[8]

Plaintiff's statistics indicate that there are many weight adjustments for flight attendants, which nearly always result in increases in the maximum weights, but that 36% of the females got weight adjustments whereas only 13% of the males received such adjustments. The materiality of that statistic diminishes greatly in light of the fact that only one flight attendant has ever been terminated and few have been suspended.

In addition, there was no evidence presented as to the percentage of males or females who were turned down in a request for weight adjustment. If anything, it could indicate that National's personnel who assign the maximum weight—all of whom are women—may have more familiarity with setting weight requirements for female flight attendants than they do for male flight attendants.

Defendant's major witness was Dr. Whaley, an internist from Atlanta who has 300 to 500 flight attendants as well as a number of professional athletes among his patients. He not only advises many of them as to weight matters but also conducts a weight control program for the Marine Corps Reserve. In addition, he serves an an internal medicine consultant for Delta Airlines.

Dr. Whaley's testimony included a number of medical conclusions relevant to the claim of discrimination in this case: He concludes it is equally hard or easy for males or females to lose weight. For example, he sees no difference in the difficulty of a 5′6″ male maintaining 148 pounds or a female of the same height maintaining a weight of 123 pounds. He likewise sees no difference in the difficulty of members of either sex in maintaining their individually set maximum weights. Dr. Whaley firmly believes in an idea that is not altogether popular: weight should not increase with age. In his opinion National's weight program is "medically sound, reasonably attainable and consistent with good health."

Dr. Whaley also observes that 10 pounds are more consequential at the lower end of the weight scale than at the top. For example, if a female whose ideal weight of 110 is 10 pounds overweight, a man with an ideal weight of 180 pounds is not equally overweight if he weighs 190 pounds. Consequently, the court observes that the measure of any claimed disparity should not be by pounds but by a percentage of deviation from the ideal weight. Dealing with pounds is more convenient for both courts and litigants but contains this inherent error.

He further points out an obvious conclusion: that "tubbies" on airlines are less agile and agility is an important factor in flight attendants discharging the primary duty of providing safety for passengers. Cf. *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir. 1971).

---

7. Plaintiff's exhibits 56 and 59.

8. In National's brochure, which has never been adopted as its policy, a weight of 140 pounds is listed for a woman of 68″–69″ tall and 165

pounds for a man of that height. It can be noted that plaintiff's assigned maximum weight was two pounds over the brochure figure.

■ Plaintiff asserts that only 22% of the females in the United States can meet the average maximum weight limitation set by National for its stewardesses while 30% of the men in the United States can meet the average maximum weight set for its stewards. The court cannot find that this disparity in percentage is such that it proves discrimination. Accord, *Jarrell v. Eastern Airlines, Inc.*, 430 F.Supp. 884 (E.D.Va. 1977). But see *Gerdom v. Continental Airlines, Inc., supra.* The statistics do correlate with Dr. Whaley's observation that 10 pounds are more consequential at the lower end of the scale than at the top.

## CONCLUSIONS OF LAW

■ Plaintiff's statistics, standing alone, cannot support a claim of discrimination based on defendant's weight requirements, especially in the face of the clearly convincing evidence showing the fairness of the individual treatment of flight attendants—whether male or female. And while statistics alone may be sufficient to prove a violation of Title VII, *Sabala v. Western Gillette Inc., supra* at 1261, the absence of any other evidence of discrimination combined with the weak nature of the statistical evidence, lead the court to conclude that less weight must be placed on such evidence. See *Roman v. ESB, Inc.*, 550 F.2d 1343, (4th Cir., 1976). It was incumbent upon plaintiff to demonstrate that National's policy caused a discriminatory impact upon the class or that defendant's justification was but a pretext. *General Electric Co. v. Gilbert, supra; McDonnell Douglas Co. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has failed in her proof. *General Electric Co. v. Gilbert, supra.*

■ Even if the statistical evidence were more persuasive, plaintiff finds herself blocked by a legal obstacle. In *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1975), the court *en banc*, concluded that

> "distinctions between men and women on the basis of something other than immutable . . . characteristics do not inhibit employment opportunity in violation of Sec. 703(a)."

*Id.* at 1092. As the evidence so clearly demonstrated weight—unlike height—is not an immutable characteristic. See also *Jarrell v. Eastern Airlines, Inc.*, 430 F.Supp. 884 (E.D.Va.1977); *Cox v. Delta Air Lines, Inc.*, No. 75–1639–Civ–CA (S.D.Fla. Sept. 30, 1976); *Gerdom v. Continental Airlines, Inc., supra* ; Cf. *Boyd v. Ozark Air Lines, Inc.*, 419 F.Supp. 1061 (E.D.Mo.1976).

■ National's weight program is designed to promote the twin objectives of safety and service. In reviewing the objectives of Title VII, the Supreme Court declared that

> "[w]hat is required by Congress is the removal of *artificial, arbitrary*, and *unnecessary* barriers to employment when the barriers operate invidiously to discriminate on the basis of [an] impermissible classification."

*Griggs v. Duke Power Co., supra* 401 U.S. at 431, 91 S.Ct. at 853 (emphasis added). Defendant's weight program, has been proven to be neither artificial, arbitrary, nor unnecessary. Congress, in enacting Title VII, did not purport to "limit an employer's right to exercise his informed judgment as to how best to run his shop." [9] *Willingham v. Ma-*

---

**9.** Plaintiff asserts that National has the most stringent weight requirements of the trunk airlines for flight attendants. By itself, the materiality of such evidence as to a claim of discrimination is lacking. Some airline has to be the most stringent and some other airline has to be the most lenient. Absent discrimination, if National wishes to have a lean, lithe corps, that is a management decision. Conversely, if National wishes to provide stocky, robust flight attendants that too is a management decision.

Pervading the testimony throughout these consolidated cases is at least an attitude that National runs an elite corps of flight attendants. Ms. Margaret Hanson, Senior Manager of the Flight Attendant Department, emphasizes this by her observation that airlines are very competitive and National has to offer service and a good image.

To the extent permitted by Federal Evidence Rule 201 the court can take judicial notice that

con *Telegraph Publishing Co., supra* at 1092. Accordingly, judgment must be entered for defendants in accordance with this opinion.

DONE AND ORDERED this 26 day of April, 1977.

in southern Florida National's flight attendants enjoy a reputation for competence as well as good looks. The court's judicial notice is supplemented by personal experience gained from more than 100 flights aboard National Airlines and a total of more than 500 flights aboard 24 United States commercial air carriers.