648 F.2d 1223
 26 Fair Empl.Prac.Cas. 601,
26 Empl. Prac. Dec. P 31,921
Carole A. GERDOM, Plaintiff-Appellant,
v.
CONTINENTAL AIRLINES, INC., Defendant-Appellee.
UNION OF FLIGHT ATTENDANTS, LOCAL 1, Plaintiff-Appellant,
v.
CONTINENTAL AIRLINES, INC., Defendant-Appellee.
 No. 79-3215.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1981.
Decided June 22, 1981.
 
 Jay D. Roth, Taylor, Roth & Grant, Los Angeles, Cal., for plaintiff-appellant; Barrett D. Litt (on brief).
 Willard Z. Carr, Jr., Los Angeles, Cal., for defendant-appellee; H. Frederick Tepker, Gibson, Dunn & Crutcher, Michael Ryan, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED and SCHROEDER, Circuit Judges, and SOLOMON*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 The plaintiffs contend that Continental Airlines' weight requirements for its flight attendants violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976), because they discriminate on the basis of sex. They advance both adverse impact and disparate treatment arguments in support of their claim. We affirm the district court's finding that the plaintiffs' adverse impact claim is without merit. But we remand for consideration of the disparate treatment claim.
 
 I.
 FACTS AND PROCEDURAL BACKGROUND
 
 2
 Until 1973, Continental required that its flight hostesses, then an all female position, maintain their weight below maximum weights determined from a published height/weight chart. In the wake of Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971), which held that a policy of only hiring women as flight attendants violated Title VII, Continental began hiring men and redesignated the position flight attendant rather than flight hostess. As of 1974, only two percent of Continental's flight attendants were men, and they apparently still constitute a small minority. After Continental abandoned its height/weight chart in 1973 it required flight attendants to maintain their weight in a reasonable relationship to their height, bone structure, and age.
 
 
 3
 Carole A. Gerdom was a flight hostess for Continental from 1961 until 1971. Although her record was otherwise exemplary, she was suspended without pay eight times for exceeding her maximum weight. On March 22, 1971, she was terminated because she had exceeded her maximum weight for ninety days. Gerdom, who is 5'51/2 tall, weighed 1461/2 pounds at that time, thirteen pounds above her maximum weight.
 
 
 4
 Gerdom sued Continental and her union, the Air Line Pilots Association (ALPA), in 1972, claiming that her termination constituted unlawful sex discrimination under Title VII. She sought to represent a class of flight attendants who had been suspended or terminated for failure to conform to Continental's weight requirements. More than eight flight hostesses or attendants have been terminated for violating the weight requirements and more than 145 have been suspended for that reason since Gerdom tolled Title VII's statute of limitations. The court dismissed the suit against the union in 1973. ALPA subsequently filed suit against Continental on behalf of flight attendants who had been suspended or terminated for exceeding their maximum weight. Gerdom's suit and the union's suit were consolidated, and the Union of Flight Attendants was substituted as a plaintiff in place of ALPA in 1977 after it replaced ALPA as the bargaining representative for the affected employees. The plaintiffs here challenge both the pre-1973 weight requirements, based on the height/weight chart, and the post-1973 requirements, based on the reasonable relationship to height, weight, and bone structure.
 
 
 5
 The district court denied Gerdom's motion to certify a class on November 19, 1973. The judge stated that the class should only consist of those women who had been terminated for failing to meet their weight requirement and should not include those who had merely been suspended. Since only eight women had been terminated, the numerosity requirement of Rule 23 of the Federal Rules of Civil Procedure was not satisfied.
 
 
 6
 The district court granted partial summary judgment in favor of plaintiffs on September 10, 1974. It concluded that the weight requirements violated Title VII because they only applied to women prior to 1972, since there were no male flight attendants then, and, since there were few male flight attendants in 1974, the requirements had a disproportionate adverse impact on women after 1972. The district court declined to issue an injunction barring Continental from enforcing its weight program, however, because it concluded that if Continental hired more male flight attendants its weight requirements would no longer have a disproportionate impact on women.
 
 
 7
 The district court judge who had issued these decisions died. Thereafter, the case was placed before another judge. This court reconsidered the decisions and, on November 27, 1978, vacated the decision granting partial summary judgment to plaintiffs. It rejected the conclusion that the weight requirements had a disproportionate adverse impact on women because there was no allegation that the requirements were more strictly applied to female flight attendants than to male flight attendants. It concluded that Continental was discriminating on the basis of weight rather than sex. Because Title VII does not bar weight discrimination, the court entered summary judgment in favor of Continental.
 
 
 8
 We agree that Continental's weight requirements had no adverse impact on women. But, in rejecting the first judge's finding of adverse impact, the district court failed to consider the plaintiffs' disparate treatment claim. The plaintiffs claim that the imposition of weight requirements on flight attendants, a predominantly female position, constitutes unlawful disparate treatment when no requirements or more lenient requirements are imposed on predominantly male positions such as directors of passenger service (DPSs), sales agents, and pilots. We remand for consideration of this claim. We also reverse the denial of class certification and order the district court to certify a class consisting of female flight attendants who were suspended or terminated.
 
 II.
 SEX DISCRIMINATION
 A. Adverse Impact
 
 9
 The plaintiffs argue that Continental's weight policy had an adverse impact on women under Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). But as the district court concluded, there was no adverse impact. In Griggs, blacks challenged an employer's use of educational and intellectual requirements. The Court held that the requirements violated Title VII because they operated to exclude more blacks than whites from desirable jobs and there was no business necessity for the requirements. 401 U.S. at 429-33, 91 S.Ct. at 852-853. In Dothard, women challenged height and weight requirements for positions in Alabama's prison system that excluded forty percent of the female population but only one percent of the male population. Because the requirements tended to exclude women, they were found unlawful for certain jobs that did not involve direct contact with male prisoners. 433 U.S. at 331-32, 97 S.Ct. at 2727-2728. These cases are inapplicable because Continental's weight requirements have not excluded women as a class from jobs as flight attendants. Some women have been excluded, but that exclusion has been on the basis of weight only. Prior to 1972, the weight requirements could not have restricted employment opportunities for women as a class because only women were hired for the position. Stroud v. Delta Air Lines, Inc., 544 F.2d 892 (5th Cir. 1977). There is no evidence that the weight requirements have restricted employment opportunities as flight attendants for women as a class since 1972. Nor is there any allegation that the requirements have been enforced more strictly against female flight attendants than against male flight attendants. Therefore, we affirm the district court's dismissal of the adverse impact claim.
 
 B. Disparate Treatment
 
 10
 Although the adverse impact claim fails because women have not been excluded from jobs as flight attendants, a prima facie case of sex discrimination may be established under the disparate treatment theory if persons of one sex are treated differently than similarly situated persons of the other sex and no adequate explanation for the different treatment exists. Golden v. Local 55 of the International Association of Firefighters, 633 F.2d 817, 821 (9th Cir. 1980); B. Schlei & P. Grossman, Employment Discrimination Law 16 (1976). The plaintiffs claim that Continental violated Title VII by applying strict weight requirements to flight attendants a predominantly female position while having no weight requirements, or applying requirements more leniently, to predominantly male positions. The issue is whether the predominantly male positions are similarly situated with respect to flight attendants for purposes of Title VII so that treating them differently constitutes sex discrimination.
 
 
 11
 Continental may impose weight standards on its employees, and it may have different weight requirements for men and women of the same height to take account of physiological differences between the sexes. In Baker v. California Land Title Co., 507 F.2d 895 (9th Cir. 1974), cert. denied, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975), this court held that Title VII does not prevent employers from adopting grooming standards that differ for men and women. The court in Baker affirmed the dismissal of a suit brought by a male employee who had been dismissed for violating his company's hairlength policy, which allowed women to wear their hair longer than men could. In other circuits, "Challenges to weight rules for flight attendants have been consistently rejected." B. Schlei & P. Grossman, supra, at 100 (1979 Supp.). Most of those cases involved claims that it was unlawful for an airline to allow male flight attendants to weigh more than female flight attendants of the same height. See, e. g., Jarrell v. Eastern Airlines, Inc., 430 F.Supp. 884 (E.D.Va.1977), aff'd per curiam, 577 F.2d 869 (4th Cir. 1978); Leonard v. National Airlines, Inc., 434 F.Supp. 269 (S.D.Fla.1977); see also Weinlein, Flight Attendant Weight Requirements and Title VII of the Civil Rights Act of 1964, 45 J. Air L. and Com. 503 (1980).
 
 
 12
 The plaintiffs allege, however, that Continental's weight requirements violate Title VII because they are imposed on a predominantly female job classification while similar job classifications which are predominantly male are not subject to such requirements or are subject to much more lenient requirements. The plaintiffs list three allegedly similar job classifications, pilots, sales agents, and directors of passenger service (DPSs). Pilots and sales agents have never been subject to weight requirements, while DPSs are subject to more lenient weight requirements which have allegedly been enforced more leniently than the requirements for flight attendants.
 
 
 13
 The plaintiffs' primary argument is that DPSs are similarly situated for purposes of Title VII. If DPSs are not similarly situated, a fortiori, pilots and sales agents are not. DPSs serve on Continental's most competitive routes, and assist passengers by arranging for connecting flights, reservations, and future flights. The plaintiffs point out that DPSs, like flight attendants, are in-flight personnel with a great deal of public contact, and that they often perform the duties of flight attendants. Continental argues that DPSs are not similar to flight attendants because they have less public contact, perform different functions, generally come from management positions in the company and are promoted into other management positions, and because DPS is itself a management position.
 
 
 14
 In Laffey v. Northwest Airlines, Inc., 567 F.2d 429 (D.C. Cir. 1976), female flight attendants challenged the disparate treatment accorded pursers, a predominantly male position. Pursers were in-flight personnel who served first-class passengers. Flight attendants received lower pay than pursers and were subject to weight requirements while pursers were not. The circuit court affirmed the district court's conclusion that the duties of flight attendants and pursers were essentially the same. Id. at 440. The court noted that pursers had no duties that were not also performed by flight attendants. Id. That is not the case here. The unresolved issue in this case is whether the duties of flight attendants and DPSs are so similar that no good reason exists to treat them differently with respect to weight requirements. Since it is appropriate that the district court first address this issue summary judgment in favor of the plaintiffs is unwarranted at this time.
 
 
 15
 However, a remand is appropriate so that the plaintiffs may have the opportunity to attempt to establish that the different rules for flight attendants and DPSs violate Title VII. We believe that the plaintiffs have established a prima facie case by showing that these jobs are similar, that one is predominantly male and the other predominantly female, and that the weight requirements for the jobs are different. See Texas Department of Community Affairs v. Burdine, -- U.S. --, -- n.6, 101 S.Ct. 1089, 1094 n.6, 67 L.Ed.2d 207 (1981). Continental will meet its burden of production by advancing its reasons for treating the positions differently. The plaintiffs must then show that those reasons are mere pretexts for discrimination on the basis of sex. We note that "the disparate treatment theory of Title VII requires proof of intent." Golden, supra, 633 F.2d at 821. Also, the plaintiffs retain the burden of persuasion. Burdine, supra, 101 S.Ct. at 1095. Therefore, on remand the court must consider the similarities between the jobs, Continental's reasons for having different weight requirements for the jobs, and the parties' responses to each other's assertions, in order to determine whether the plaintiffs have shown intentional discrimination.
 
 III.
 CLASS CERTIFICATION
 
 16
 The district court abused its discretion in refusing to certify a class of flight attendants who had been terminated or suspended for violating continental's weight requirements. Doniger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). Almost all of the flight attendant cases have proceeded as class actions involving suspended and terminated flight attendants. See, e. g., ALPA v. United Air Lines, Inc., 21 E.P.D. P 30,419, at p. 13,373 (E.D.N.Y.1979); Jarrell, supra, 430 F.Supp. at 886-87. If Continental's weight requirements are found to be in violation of Title VII, both suspended and terminated flight attendants will be entitled to a remedy. Thus, the central issue of this case is a common issue of concern to both suspended and terminated flight attendants. Each of the other requisites of Rule 23 is satisfied: If flight attendants who were suspended are included in the class, the numerosity requirement is satisfied; the named plaintiffs' claims are typical of the class; and it appears that the named plaintiff will vigorously represent the interests of the class. We find no merit in Continental's argument that the plaintiffs' motion for class certification was inadequately supported. The plaintiffs did significantly more than mimic the language of Rule 23. See Doniger, supra. Therefore, a class of terminated and suspended flight attendants should be certified. Since there was a dispute as to which suspended flight attendants should be included in the class because of Title VII's statute of limitations, a hearing should be conducted on that issue.
 
 
 17
 Affirmed in Part, Reversed and Remanded in Part.
 
 
 18
 SCHROEDER, Circuit Judge, concurring in part and dissenting in part:
 
 
 19
 I agree with the majority that a prima facie case of discrimination has been shown, and that the certified class should contain all the women who were suspended or terminated during the relevant period as a result of Continental's weight restrictions. In my view, however, Continental has already had ample opportunity to justify the policies, and has not done so. I therefore disagree with the majority's refusal to consider the inadequate justifications offered by the employer and with its decision to remand for further proceedings on liability in this already protracted case. I also disagree with the majority's approval of Stroud v. Delta Airlines, 544 F.2d 892 (5th Cir.), cert. denied, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977), which makes discrimination in segregated job classifications needlessly burdensome to prove.
 
 
 20
 During the period in question, Continental enforced, as a condition of employment, rigid weight requirements for flight attendants, all of whom were women. No such restrictions were enforced against any male employees, not even "directors of passenger service", who, under a different title, were also serving passengers during flights. As a result of the weight requirements, the women were subjected to embarrassing monthly weigh-ins, many pursued debilitating diets, and those sought to be represented in this litigation were subjected to actual suspension and termination.
 
 
 21
 The weight requirements at issue had no relationship to a flight attendant's physical ability to perform the job. There is no suggestion that the plaintiffs in this case performed less ably when they weighed 136 pounds as opposed to 135. The record reflects that no disciplinary action was ever taken against males during this period, even though several admitted that they consistently exceeded their maximum allowable weight. This is not a case where functionally similar grooming requirements were required of both men and women. Contrast, Baker v. California Land Title Co., 507 F.2d 895 (9th Cir. 1974).
 
 
 22
 Continental attempts to justify the weight restrictions for women, as well as its different treatment of the male DPSs, by asserting that the policy for the female flight attendants was a business judgment implementing the "image" which the airline wished to project and that male DPSs were exempted from such onerous restrictions because the men would eventually perform management rather than service functions. In my view, these explanations simply highlight the injustice which has been done to the women involved.
 
 
 23
 This case, which was instituted in 1973, is another, and particularly stale phase of the legal efforts to remedy the effects of discriminatory airline policies designed to insure that passengers were served by females who were "young, nubile, fashionably thin, and single." Heenan, Fighting the "Fly-Me" Airlines, 3 Civil Liberties Rev. No. 5 at 48 (1976-77). See also Binder, Sex Discrimination in the Airline Industry: Title VII Flying High, 59 Cal.L.Rev. 1091 (1971). As early as 1968, when Title VII was still in its infancy, the EEOC condemned the airlines' policies of mandatory retirement for stewardesses at age 32 or 35 as "part and parcel" of the policy of sex discrimination. Dodd v. American Airlines, Inc., CCH Empl.Prac.Dec. P 6001 (EEOC 1968). Damages for those stewardesses who suffered on account of the "no-marriage" rule were upheld by this Circuit in Sangster v. United Airlines, 633 F.2d 864 (9th Cir. 1980), cert. denied, -- U.S. --, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981). Within the past year, the practices within the airline industry toward women prompted judges of the fourth circuit to note that "the long history of sex discrimination by airlines generally certainly makes suspect the claim of business necessity for any employment practice resulting in a prima facie discrimination." Burwell v. Eastern Airlines, Inc., 633 F.2d 361, 372 (4th Cir. 1980) (en banc), cert. denied, -- U.S. --, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981) (Sprouse, C. J.).
 
 
 24
 No business necessity for the discriminatory policies involved here has been articulated. Being a female is not a bona fide occupational qualification for flight attendants. Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). "The primary function of an airline is to transport passengers safely from one point to another." Id. at 388. The airline is thus in the business of providing safe transportation, not feminine sex appeal.[1]
 
 
 25
 In considering the nature of the discrimination involved, the majority holds that the restrictions had no adverse impact on women. Yet the effects of the policies were felt only by women, and it is simply illogical to conclude that the effects of suspension or termination were not adverse. The majority reaches that conclusion by adopting the view, espoused by the Fifth Circuit, that a job qualification imposed solely on women has no adverse impact so long as only women are in the affected job classification, and those who lose their jobs as a result of the policy are replaced by members of the same sex. Loper v. American Airlines, 582 F.2d 956 (5th Cir. 1978); EEOC v. Delta Airlines, Inc., 578 F.2d 115 (5th Cir. 1978); James v. Delta Airlines, 571 F.2d 1376 (5th Cir. 1978); Stroud v. Delta Airlines, Inc., 544 F.2d at 893. The result of the Fifth Circuit's approach is that employees in segregated job classifications can demonstrate unlawful discrimination only by showing that others similarly situated are not similarly treated. They must therefore overcome the kind of argument made by the employer in this case, i. e., that since all of the flight attendants were women, there were by definition no men similarly situated who were treated differently.
 
 
 26
 Fortunately the majority recognizes that the plaintiffs here were able to make at least a prima facie showing of disparate treatment, since there was a male classification, DPSs, performing similar duties. See also Laffey v. Northwest Airlines, Inc., 366 F.Supp. 763 (D.D.C.1973), aff'd, 567 F.2d 429 (D.C. Cir. 1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Others who are in segregated jobs and are held to such a standard may not be so fortunate.
 
 
 27
 (I)n highly sex-segregated establishments, the few male employees often occupy totally dissimilar positions from the majority of female employees. The waitress who is fired when she gets too old to be considered alluring, for instance, is hard put to compare her treatment to that accorded the restaurant manager (A)ttempts to expand the concept of disparate treatment in this fashion give the employer a further incentive to segregate its work force.
 
 
 28
 Taub, Keeping Women in Their Place: Stereotyping Per Se as a Form of Employment Discrimination, 21 B.C.L.Rev. 345, 399-400 (1980).
 
 
 29
 I would hold that whenever an employer applies a rule only to employees in a sex-segregated job classification and not to other employees, a prima facie case of discrimination has been shown. This would be true under either disparate treatment or disproportionate impact analysis. I thus agree with the Seventh Circuit's decision in Sprogis v. United Airlines, 444 F.2d 1194 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). The Court there invalidated the no-marriage rule for airline stewardesses, stating that when an occupational position is filled only by women, the employer may impose an additional qualification, not imposed upon male employees "if and only if that requirement reflects an inherent quality reasonably necessary to satisfactory performance of the duties of stewardesses " Id. at 1199. See also In re Consolidated Pretrial Proceedings in Airline Cases, 582 F.2d 1142, 1145 (7th Cir. 1978), cert. granted sub nom., TWA v. Zipes, -- U.S. --, 101 S.Ct. 1511, 67 L.Ed. 813 (1981).[2]
 
 
 30
 The weight restrictions enforced here were not reasonably necessary to performance of the duties of flight attendants. The plaintiffs have demonstrated discrimination and I would remand this case with instructions that the district court enter judgment in favor of the plaintiffs on liability and proceed to a determination of the appropriate class and remedy.
 
 
 
 *
 Honorable Gus T. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 In Harriss v. Pan American World Airways, Inc., 637 F.2d 1297, 1302 (9th Cir. 1980), the majority recently held that an airline policy which required female flight attendants to stop work as soon as they learned they were pregnant was justified as a business necessity because occasional dizziness, nausea, and fainting in early pregnancy could interfere with passenger safety. Ironically, in this case the plaintiffs have contended that the promotion of thinness and crash dieting could undermine the attendants' performance in an emergency, and this airline has taken the position that the primary responsibility of flight attendants is to please customers and has nothing to do with safety. The "business" justification for this policy is, in reality, the same stereotyping rejected in Diaz
 
 
 [2]
 See also, Dodd v. American Airlines, Inc., CCH Empl.Prac.Dec. P 6001 (1968), which rejected an argument that since all stewardesses were female, any conditions of employment could not be sex discrimination. "The concept of discrimination based on sex does not require an actual disparity of treatment among male and female employees presently in the same job classification. It is sufficient that a company policy or rule is applied to a class of employees because of their sex, rather than because of the requirements of the job." If all the holders of one job are of one sex and a particular condition of employment is applied to them, and not to other employees, the condition must be relevant to satisfactory job performance. See also Neal v. American Airlines, CCH Empl.Prac.Dec. P 6002 (1968)