Carole A. GERDOM, Plaintiff-Appellant,

v.

CONTINENTAL AIRLINES, INC., Defendant-Appellee.

UNION OF FLIGHT ATTENDANTS, LOCAL NO. 1, Plaintiff-Appellant,

v.

CONTINENTAL AIRLINES, INC., Defendant-Appellee.

No. 79–3215.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1982.

Decided Nov. 15, 1982.

Certiorari Dismissed April 8, 1983.
See 103 S.Ct. 1534.

Jay D. Roth, Taylor & Roth, Los Angeles, Cal., for plaintiffs-appellants.

Willard Z. Carr, Jr., Gibson, Dunn & Crutcher, Los Angeles, Cal., argued, for defendant-appellee; H. Frederick Tepker, Gibson, Dunn & Crutcher, Los Angeles, Cal., on brief.

Appeal from the United States District Court for the Central District of California.

Before BROWNING, Chief Judge, CHOY, GOODWIN, WALLACE, KENNEDY, SKOPIL, SCHROEDER, FARRIS, PREGERSON, ALARCON, and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge.

This appeal concerns the validity of a policy requiring employees classified as "flight hostesses," a position held only by women, to comply with strict weight requirements as a condition of their employment with Continental Airlines. The challenged weight program was in effect until 1973 and was imposed, according to Continental, to enhance its business image by assuring that passengers were served by attractive women. No similar requirements were enforced for any job classifications which included men.

The plaintiff, Carole A. Gerdom, whose record was otherwise exemplary, was suspended and eventually terminated from her flight hostess position because her weight exceeded the maximum permitted by Continental for her height. She filed this action seeking to represent a class of hostesses who were similarly suspended or terminated as a result of Continental's policy. She challenges the policy as unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §§ 2000e *et seq.*[1] The original panel decision of this court re-

---

1. § 2000e–2(a) provides that

 [i]t shall be an unlawful employment practice for an employer ...
 to fail or refuse to hire or to discharge, any individual, or otherwise to discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e–2 (1976).

versed the district court's order granting summary judgment for Continental, ordered certification of plaintiff's class, and remanded for trial on the merits. *See Gerdom v. Continental Airlines, Inc.,* 648 F.2d 1223 (9th Cir. 1981). We granted plaintiff's petition for en banc consideration in order to determine whether the plaintiff class is entitled to judgment on the issue of liability. We now hold that it is.

## FACTS AND PROCEDURAL HISTORY

The essential facts surrounding Continental's policy and its implementation are not disputed. Beginning in the early 1960's and continuing until 1973, weight regulations were in force for flight hostesses in accordance with a published chart based upon height and weight. A hostess five feet two inches tall could weigh no more than 114 pounds; five additional pounds were allowed for each inch above that height. All hostesses were weighed once a month in full uniform including shoes. If this procedure revealed any excess, a weight reduction program was imposed. The hostess was required to lose two pounds per week and her progress was verified. If she failed to meet the scheduled loss, the hostess was suspended and eventually terminated. The weight requirements were in addition to general appearance standards. During the period covered by this appeal, more than 100 hostesses were suspended and some, including the plaintiff Gerdom, were actually terminated.

The purpose of the weight program was, according to Continental, to create the public image of an airline which offered passengers service by thin, attractive women, whom executives referred to as Continental's "girls." Continental has never suggested that these weight limitations were necessary for the physical performance of plaintiffs' food and beverage service or safety duties on flights. The record also shows that the weight program was unrelated to health concerns; indeed there is considerable evidence that it undermined the hostesses' stamina and morale, and encouraged harmful methods of weight reduc-

tion. During the same period Continental enforced no similar weight program for an exclusively male category of employees, known as directors of passenger service (DPS), who supervised and assisted the flight hostesses in their duties on busy routes, helped with ticketing, and who, although receiving higher pay than the hostesses, performed similar tasks.

The weight program challenged here was modified in 1973 in the wake of the determination that airline companies could not maintain in-flight service personnel classifications based on gender. *See Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Although the trial court proceedings in this case encompassed weight policies adopted by Continental after it hired increased numbers of male flight attendants, we consider in this appeal only those policies which were in effect before the 1973 modifications and at the time this lawsuit was filed.

This litigation has an unusual history. The case was initially assigned to Judge Crary when it was filed in 1972. He granted partial summary judgment to the plaintiff on the ground that the policy violated Title VII because it applied only to women. Following that 1974 decision, the court monitored the weight policies which Continental then applied to male and female flight attendants. In 1978, however, Judge Crary died and the case was transferred to Judge Curtis, who granted reconsideration of the partial summary judgment previously awarded to plaintiffs and entered judgment for the defendants.

On appeal, the three-judge panel of this court reversed the district court's order denying class certification. A majority, however, held that the plaintiffs could not argue that the policy had an adverse impact on women under the analysis used in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) and *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). The panel majority reasoned that because only women were hired for the position of flight hostess dur-

ing the applicable period, plaintiffs were required to proceed under a theory of disparate treatment.[2] The majority held that the plaintiffs could show that they had been treated discriminatorily due to their sex if, upon remand, they could establish that men similarly situated had not been subjected to comparable burdens. The panel thus remanded to determine whether "the different rules for flight attendants and DPSs violate Title VII." 648 F.2d at 1228.

We conclude that no such remand is necessary because the plaintiffs have adequately demonstrated that they were treated less favorably than men because of their sex. We therefore do not reach the applicability of disparate impact analysis to employment conditions imposed exclusively on a job classification restricted by race, religion, sex or national origin.

## LEGAL ANALYSIS

The legal question is whether Continental's weight program for exclusively female flight attendants constitutes discriminatory treatment on the basis of sex as proscribed by Title VII. Plaintiffs stress that the program was intentionally designed to apply only to women employees. It resulted in a loss of wages and employment only for women employees and it was never applied to male employees, even those who worked side by side with plaintiffs serving passengers on flights.

Continental advances three reasons why plaintiffs should not be able to maintain this action for discriminatory treatment on the basis of sex. It argues first that employment standards which affect personal appearance are outside the purview of Title VII and, as a matter of law, cannot be

discriminatory. Second, it argues that these employees cannot complain of discrimination because the flight hostess position was a popular one, sought by many women and denied to men, and therefore the only victims of discrimination were men. Finally, Continental argues that the weight program, even if facially discriminatory, can be justified by its judgment that female hostesses were central to its business image. We deal with each argument in turn.

■ In arguing that the weight restrictions in this case are simply a "grooming" requirement outside the purview of Title VII, Continental relies on a series of cases sanctioning different grooming standards for men and women where the requirements imposed no greater burden on one sex than on the other. Thus in *Baker v. California Land Title Co.,* 507 F.2d 895 (9th Cir.1974), *cert. denied,* 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975), this court upheld a policy which prescribed a shorter hair length for men than for women. The record in that case permitted the trial court to conclude that comparable grooming standards existed and were enforced with equal vigor on both sexes. *See Baker v. California Land Title Co.,* 349 F.Supp. 235, 237, 239 (C.D.Cal.1972), *aff'd* 507 F.2d 895 (9th Cir. 1974), *cert. denied,* 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975). *See also Fountain v. Safeway Stores, Inc.,* 555 F.2d 753, 756 (9th Cir. 1977) (employer may amend the rules for male or female employees to prevent them from becoming overly burdensome to that sex). We thus agree with the numerous decisions defining permissible grooming rules for male and female employees as those which do not significantly

---

**2.** In *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court distinguished these two theories. *Id.* at 335 n. 15, 97 S.Ct. at 1854 n. 15. Disparate treatment arises when an

> employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment ....

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.... Proof of discriminatory motive ... is not required under a disparate-impact theory. *Id.* (citations omitted).

deprive either sex of employment opportunities, and which are even-handedly applied to employees of both sexes. *See Barker v. Taft Broadcasting Co.*, 549 F.2d 400, 401 (6th Cir.1977); *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349, 1350 (4th Cir. 1976); *Knott v. Missouri Pacific Railroad Co.*, 527 F.2d 1249, 1252 (8th Cir.1975); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 457 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Dodge v. Giant Food, Inc.*, 488 F.2d 1333, 1337 (D.C.Cir.1973). Several courts have similarly upheld physiologically based policies which set a higher maximum weight for men than for women of the same height. *See e.g., Jarrell v. Eastern Air Lines, Inc.*, 430 F.Supp. 884, 893 (E.D.Va.1977), *aff'd. per curiam*, 577 F.2d 869 (4th Cir.1978); *Leonard v. National Airlines, Inc.*, 434 F.Supp. 269, 272–73 (S.D.Fla.1977); *Comstock v. Eastern Air Lines, Inc.*, 10 Empl.Prac.Dec. (CCH) ¶ 10,392 (E.D.Va.1975). In those cases, unlike this case, no significantly greater burden of compliance was imposed on either sex; that is the key consideration. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d at 457, (an employer's preference for "trimness" may be effectuated only where males and females are treated equally); *accord ALPA v. United Airlines, Inc.*, 21 Empl.Prac.Dec. (CCH) ¶ 30,419 (E.D.N.Y.1979).

Thus Title VII has been held to have been violated where special appearance rules were imposed on members of only one sex. *Carroll v. Talman Federal Sav. & Loan Ass'n*, 604 F.2d 1028, 1032–33 (7th Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1316, 63 L.Ed.2d 762 (1980). In *Carroll*, which involved a requirement to wear uniforms, the court noted that while there is nothing offensive about uniforms *per se*, requiring only female employees to wear them is "disparate treatment . . . demeaning to women . . . based on offensive stereotypes prohibited by Title VII." *Id.*

The same rationale has been applied by the Sixth Circuit in holding that abandonment of an unmarried name in favor of a spouse's surname cannot be made the subject of a rule applied only to females. *Allen v. Lovejoy*, 553 F.2d 522, 524 (6th Cir. 1977). "A rule which applies only to women, with no counterpart applicable to men, may not be the basis for depriving a female employee who is otherwise qualified of her right to continued employment." *Id.* The court there distinguished cases in which grooming requirements for one gender co-existed with comparable requirements for the other. *Id.*

We therefore conclude that Continental cannot avoid Title VII scrutiny of its weight program for flight hostesses on the theory that its subject matter is outside the scope of the statute.

■ Continental's next argument is that its policy cannot unlawfully discriminate against women because it applies to a glamorous position which many, including men, sought. That argument is also without support.

Early decisions considering the pervasiveness of gender-based discrimination in the airline industry struck down all-female employment categories, like Continental's flight hostess classification, because they discriminated against men. *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); *Hailes v. United Airlines*, 464 F.2d 1006 (5th Cir.1972); Decision No. 70–37, EEOC Dec. (CCH 1973) ¶ 6051 (1969); Decision No. 70–89, EEOC Dec. (CCH 1973) ¶ 6063 (1969). It does not follow, however, that only those denied work, or those in menial and undesirable positions may complain of discrimination in policies applicable to segregated classifications. The exclusively female classification in this case typifies the then prevailing pattern in the airline industry of restricting job opportunities and imposing special conditions on the basis of gender stereotypes.

These practices have not survived judicial scrutiny. Thus airlines can no longer prevent all but young, single women from working as cabin attendants. *See generally Burwell v. Eastern Air Lines, Inc.*, 633 F.2d 361, 371 (4th Cir.1980) (en banc), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1480, 67

L.Ed.2d 613 (1981); *In re Consolidated Pretrial Proceedings,* 582 F.2d 1142, 1145 (7th Cir.1978), *cert. granted sub nom., TWA v. Zipes,* 450 U.S. 979, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981) ("no motherhood" policy for female flight attendants constitutes sex discrimination); *Sprogis v. United Airlines, Inc.,* 444 F.2d 1194, 1198 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971) (prohibiting women flight attendants from marrying held discriminatory), *see also Dodd v. American Airlines, Inc.,* EEOC Dec. (CCH 1973) ¶ 6001 (1968) (condemning mandatory retirement at age 33 or 35 as "part and parcel" of the airline's sex discrimination policies). This circuit has held that flight attendants who were the victims of similar practices are entitled to reinstatement and to damages. *Sangster v. United Airlines, Inc.,* 633 F.2d 864 (9th Cir.1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981); *Inda v. United Airlines, Inc.,* 565 F.2d 554 (9th Cir.1977).

The harmful effects of occupational cliches were addressed recently by the Supreme Court in *Mississippi University for Women v. Hogan,* —— U.S. ——, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982), a suit by a male R.N. to gain admission to an all-female nursing school. In that case Justice O'Connor's opinion for the Court cautioned against permitting gender-based classifications based on stereotypical notions of the roles of men and women. Her discussion highlighted the history of women's exclusion from a wide spectrum of employment opportunities ranging from admission to the legal profession to bartending. *Id.* at —— n. 10, 102 S.Ct. at 3336 n. 10. Justice O'Connor also noted that, while denying entry to men helped to maintain a female monopoly in nursing, it served to perpetuate the stereotypical view of nursing as women's work, which, far from serving to benefit women

professionally, is thought to have depressed nursing wages. *Id.* at —— n. 15, 102 S.Ct. at 3339 n. 15. Continental's argument that women have been the beneficiaries of its policy of gender-based job segregation thus lacks support both in law and history.

Continental also relies upon *Stroud v. Delta Airlines, Inc.,* 544 F.2d 892 (5th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977), for its position that by hiring only women as flight attendants it has immunized itself against claims of discriminatory treatment by those employees. The court in *Stroud,* considering a no-marriage rule, reasoned that policies applied solely to exclusively female flight attendants discriminated not on the basis of gender, but of job classification. *Id.* at 893. Because no men had the same duties as the stewardesses, the women could not complain that the no-marriage rule applied solely to them.

The Supreme Court's decision in *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), rejects that narrow reasoning. In *Gunther,* affirming the decision of this court, the Supreme. Court held that discrimination in compensation could be shown without proof that plaintiffs' jobs were equal to higher-paying jobs held by the opposite sex. *Id.* at 178–80, 101 S.Ct. at 2252–53. Thus in demonstrating that the burdensome regulations imposed on an all-female job category were discriminatory, plaintiffs here need not prove that men exempt from these rules performed the same services. Such a rule improperly limits the scope of Title VII. "In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Id.* at 180, 101 S.Ct. at 2253.[3] The statute is

---

**3.** The argument that stewardesses could not complain of discriminatory treatment because there were no better treated males with similar duties was rejected in an early round of EEOC decisions, which stated that "[t]he concept of discrimination based on sex does not require an actual disparity of treatment among male and female employees presently in the same job classification. It is sufficient that a company policy or rule is applied to a class of employees because of their sex, rather than because of the requirements of the job." *Dodd v. American Airlines, Inc.,* EEOC Dec. (CCH 1973) ¶ 6001 (1968); *Neal v. American Airlines,* EEOC Dec. (CCH 1973) ¶ 6002 (1968).

not limited in its protection to those job classifications which include both genders. *See Id.* at 178–79, 101 S.Ct. at 2252–53.

We turn finally to the merits of the claim that Continental's weight program unlawfully discriminated against women flight attendants, and to Continental's defense of the policy as a competitive measure.

■■■ In proving disparate treatment, the plaintiff has the initial burden of producing sufficient evidence of discriminatory treatment, a burden which is not onerous. The burden of production then shifts to the defendant to put forward a neutral, nondiscriminatory justification for the treatment. The plaintiff must then have the opportunity to show that the justification is mere pretext. The burden of persuasion with respect to intent remains with plaintiff at all times. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 575–78, 98 S.Ct. 2943, 2948–50, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Hagans v. Andrus,* 651 F.2d 622, 624–25 (9th Cir.), *cert. denied sub nom. Hagans v. Watt,* 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *Lynn v. Regents of the University of California,* 656 F.2d 1337, 1341 (9th Cir.1981), *cert. denied,* — U.S. —, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982).

The *McDonnell Douglas-Burdine* analysis was originally formulated in cases of claimed discrimination in individual hiring or promotion decisions which were not facially based upon gender, race or other suspect criteria. The purpose of this order of proof is to isolate improper motive. *Furnco Const. Corp. v. Waters,* 438 U.S. at 577, 98 S.Ct. at 2949–50. In some cases, facially different treatment itself implies intent. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The general principle is that the plaintiff has the initial burden of offering evidence which is sufficient to create an inference of intentional discrimination. *Id.* at 358 & n. 44, 97 S.Ct. at 1866 & n. 44.

■■ A facial examination of the weight program here reveals that it is designed to apply only to females. Where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender, this court has held that the plaintiff need not otherwise establish the presence of discriminatory intent. *Norris v. Arizona Governing Committee,* 671 F.2d 330, 333 (9th Cir.), *cert. granted,* — U.S. —, 103 S.Ct. 205, 74 L.Ed.2d 164 (1982); *Douglas v. Anderson,* 656 F.2d 528, 531 n. 2 (9th Cir.1981). It is not necessary to establish that there were male employees similarly situated in order to establish a prima facie case.

The fact that this policy applied to an intentionally all-female job classification does not alter the analysis or make the policy less facially discriminatory. By Continental's own admission, the policy was enforced only against women because it was not merely slenderness, but slenderness of female employees which Continental considered critical. *See also* the discussion in *EEOC v. Sage Realty Corp.,* 24 Fair Empl. Prac.Cas. (BNA) 1521, 1528 (S.D.N.Y.1981) (involving a requirement that exclusively female lobby hostesses wear revealing uniforms, held to be prima facie discrimination).

Because Continental's facially discriminatory policy itself supplies the requisite elements of a prima facie case, we must look to Continental's efforts to rebut it.

■■ A prima facie showing of discrimination is rebutted by raising a genuine issue of fact as to the existence of a legitimate nondiscriminatory reason for the challenged practice. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In this case that would entail a showing that persons of either sex who exceed the weight limits imposed on these flight hostesses would be less able to perform their duties. Continental, however, has never attempted to assert such a justification. It concedes that the weight program did not improve

the ability of attendants to perform their duties.

The only justification that has been advanced for the weight program is Continental's desire to compete by featuring attractive female cabin attendants. Subsumed in its assertion is the view that, to be attractive, a female may not exceed a fixed weight. Continental has never argued that all people, regardless of gender, are unattractive if they exceed fixed weight criteria. Nor has it suggested that the same competitive image would have been served by hiring thin males as well as females.

The difficulty with the justification, therefore, is that it is not neutral. It is discriminatory on its face, for it merely declares the company's determination to impose this requirement on employees because they are females. Continental's policy would be defensible if Continental could show that being a thin female was a bona fide occupational qualification for serving passengers on airplanes. 42 U.S.C. § 2000e–2(e) (1976).[4] Continental does not argue that only thin females can do the job, however. To the extent it suggests a justification based on consumer preference for female hostesses, such a justification must fail. This court has recently held gender-based discrimination cannot be upheld on the basis of customer preferences unrelated to abilities to perform the job. *Fernandez v. Wynn Oil Co.,* 653 F.2d 1273, 1276–77 (9th Cir.1981). It has long been established in the airline industry that passengers' preference for attendants who conform to a traditional image cannot justify discriminatory airline hiring policies.

While we recognize that the public's expectation of finding one sex in a particular role may cause some initial difficulty,

it would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid. Indeed, it was, to a large extent, these very prejudices the Act was meant to overcome. Thus, we feel that customer preference may be taken into account only when it is based on the company's inability to perform the primary function or service it offers.

*Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385, 389 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971).

Where as here an employer cannot state a legitimate nondiscriminatory reason to rebut a plaintiff's prima facie case, a reviewing court may conclude, as we do in this case, that discrimination has been established as a matter of law, based on the plaintiff's initial showing. *Muntin v. State of Cal. Parks and Recreation Dept.,* 671 F.2d 360, 362 (9th Cir.1982).

If Continental had tried to assert a nondiscriminatory reason for the weight program, the pretextual or non-pretextual nature of its justification would have to be considered. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). At this stage in the proof a comparison with employees who are similarly situated would become relevant. *Id.; McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Piva v. Xerox Corp.,* 654 F.2d 591, 598 (9th Cir. 1981). Unequal treatment of a different class in the same employment context is significant evidence of pretext. B. Schlei & P. Grossman, Employment Discrimination Law 314 (Supp.1979).

---

**4.** 42 U.S.C. § 2000e–2(e) provides:

Notwithstanding any other provision of this title [42 U.S.C. §§ 2000e et seq.], (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor-management committee

controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.
42 U.S.C. § 2000e–2(e) (1976).

The pretextual quality of any justification which could be asserted is demonstrated by the presence of male DPS's on flights. They performed the same physical tasks as flight hostesses but weighed far more, thus belying a contention that people who weigh less perform better. Since both DPS's and hostesses served the flying public, but only hostesses were required to obey weight rules, the airline could not successfully maintain that the image of slimness was the critical factor regardless of gender. A remand to consider such a justification for the weight program would therefore serve no useful purpose.

## CONCLUSION

We hold that Continental's policy of requiring an exclusively female category of flight attendants, and no other employees, to adhere to the weight restrictions at issue here constitutes discriminatory treatment on the basis of sex. The class of suspended and terminated flight attendants should be certified, as the panel decision properly held that all of the requisites of Rule 23 are satisfied. 648 F.2d at 1228. That panel opinion is otherwise vacated and the case is remanded to the district court for consideration of appropriate relief.

FARRIS, Circuit Judge, with whom BROWNING, Chief Judge and CHOY, WALLACE and KENNEDY, Circuit Judges, join, dissenting:

I find discrimination no less an evil than does the majority. I believe, however, that making factual determinations at the appellate level may prove a more invidious evil. I therefore respectfully dissent.

Until 1973 Continental Airlines hired only women as flight hostesses and required them to maintain their weight below the maximum set forth in its published height/weight chart. Continental changed its policy of hiring only women as flight attendants after *Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385, 388–89 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971), held that Pan Am's identical policy violated Title VII.

Thereafter, Continental redesignated the position "flight attendant" and began hiring men. In 1973 the height/weight chart was replaced with a "general appearance standard" which required that flight attendants maintain their weight in a "reasonable relationship" to their height, bone structure, and age. Other weight policies were subsequently in effect until 1977 when Continental eliminated all weight requirements.

Carole Gerdom was a flight hostess for Continental from 1961 until 1971. Although her record was otherwise exemplary, she was suspended without pay eight times for exceeding her maximum weight. In March 1971 she was terminated because she had exceeded her maximum weight for ninety days.

In 1972 Gerdom sued Continental and her union, the Air Line Pilots Association, claiming that her termination constituted unlawful sex discrimination in violation of Title VII. Gerdom requested compensatory and punitive damages, injunctive relief, and attorney's fees. She also sought to represent a class of flight hostesses and attendants who had been either suspended or terminated for failing to meet Continental's weight requirement. During the relevant period, at least eight flight attendants were terminated and more than 145 suspended for violating the weight requirement.

The district court denied Gerdom's motion to certify a class of terminated and suspended flight attendants on a theory that the relevant class should not include suspended flight attendants. Because only eight women had been terminated, the numerosity requirement of Fed.R.Civ.P. 23 was not satisfied.

The judge who ultimately decided the case granted Continental's motion for summary judgment. The court rejected Gerdom's argument that the weight requirement had had a disproportionately adverse impact on women because Gerdom did not allege that the requirement had been applied more strictly to female flight attendants than to male flight attendants. The court concluded that Continental had not

discriminated on the basis of sex, but rather on the basis of weight, which is not barred by Title VII.

While I agree that Continental's weight requirement did not have an adverse disparate impact on women, I would remand because the district court failed to consider Gerdom's disparate treatment argument. Gerdom had also argued that the weight policy, which applied only to the exclusively female flight hostess position, constituted unlawful disparate treatment because similar but predominantly male positions had either no weight requirement or, at most, a more lenient weight requirement. I agree with the majority that we should reverse the denial of class certification, but I would remand for trial on the merits. The majority instead resolves the issue and remands only for the award of damages.

## ANALYSIS

### I. THEORIES AVAILABLE FOR PROVING SEX DISCRIMINATION

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), provides, in relevant part, that it shall be an unlawful employment practice for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

There are two theories available for proving Title VII employment discrimination. The theories involve different burdens of proof and production, and each is best suited for challenging a particular type of employment decision or practice. Sometimes both theories may be applied to the same

set of facts. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977).

In *Teamsters* the Supreme Court distinguished these two theories. Disparate treatment arises when an

employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. . . .

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. . . . Proof of discriminatory motive . . . is not required under a disparate-impact theory.

*Id.* (citations omitted).

### A. DISPARATE IMPACT

The disparate impact theory was first articulated by the Supreme Court in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In order to establish a prima facie case of sex discrimination under this theory, a plaintiff need show only that a facially neutral employment practice produces a significantly adverse impact on one sex. *Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977). Gerdom argues that Continental's weight policy had such an adverse impact on women. I would reject the argument.

Although the weight policy affected more women than men, this effect was not because the policy was directed towards women but was rather the inevitable consequence of the fact that during the period in question all flight hostesses were women. *See Connecticut v. Teal,* —— U.S. ——, ——, 102 S.Ct. 2525, 2533, 73 L.Ed.2d 130 (1982), *citing Dothard,* 433 U.S. at 329–30 & n. 12, 97 S.Ct. at 2726–27 & n. 12. Because

there were no male flight hostesses, any neutral employment practice would necessarily have affected more women than men. For example, if flight hostesses were punished more severely for being late to work, a serious problem since it often would result in missing a flight, the penalty would also have affected more women than men. I do not read Title VII as going so far as to subject to judicial scrutiny every employment condition or requirement that is applied to a job category in which most of the employees are of one sex. There must be proof that the disproportionately adverse impact on one sex was caused by the challenged employment condition or requirement. *Pouncy v. Prudential Insurance Co.,* 668 F.2d 795, 800–01 (5th Cir.1982); *Equal Employment Opportunity Commission v. Greyhound Lines, Inc.,* 635 F.2d 188, 192–93 (3d Cir. 1980). Continental is now hiring more male flight attendants. I would expect that the proportion of flight attendants of either sex affected by the weight requirement would approximate the gender composition of the workforce of flight attendants. If the weight requirement has a greater impact on female flight attendants than on male flight attendants, the disparate impact theory would be appropriate for arguing that the weight requirement violates Title VII.

The Supreme Court's recent decision in *Connecticut v. Teal,* —— U.S. ——, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), is not to the contrary. In *Teal* a group of black employees challenged their employer's use of a facially neutral examination which a disproportionate number of blacks failed. The Court rejected the employer's "bottom line" defense that he took corrective measures to insure that the number of blacks promoted reflected their numbers in the community. *Id.* at —— —— ——, 102 S.Ct. at 2533–34. *Teal* is inapposite because it involved two different racial groups of employees subject to a facially neutral requirement that had a disparate impact on only one of the groups. The two groups present in the facts before this court are not distinguishable under the terms of Title VII. The weight requirement discriminated against one group of women who could not meet Continental's weight requirement and favored a different group of women who could.[1] Gerdom did not allege that the weight requirement selected or rejected applicants or affected working conditions in a male-to-female ratio significantly different from that of the pool of flight hostesses or flight hostess applicants. No comparison can be made between male and female flight attendants because there were no male flight attendants during the period in question. Therefore, the disparate impact theory is not appropriate for analysis of these facts. *See Dothard v. Rawlinson,* 433 U.S. 321, 330, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425–36, 95 S.Ct. 2362, 2375–80, 45 L.Ed.2d 280 (1975); *Pouncy v. Prudential Insurance Co.,* 668 F.2d 795, 800–01 (5th Cir. 1982); *Equal Employment Opportunity Commission v. Greyhound Lines, Inc.,* 635 F.2d 188, 192–93 (3d Cir.1980).

I would therefore find that although Gerdom failed to establish her claim under the disparate impact theory, she might still be able to do so under the disparate treatment theory.

### B. DISPARATE TREATMENT

The disparate treatment theory was first articulated by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This mode of analysis is appropriate when an

---

1. The "sex-plus" cases are also not to the contrary. In these cases courts found unlawful discrimination where an employer discriminated against a subset of women. But these cases involved discrimination against the subset of women in favor of a similarly situated group of men. *See, e.g., Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 543–44, 91 S.Ct. 496, 497–98, 27 L.Ed.2d 613 (1971) (employer's refusal to hire women with preschool children, but not men with preschool children, violated Title VII); *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7th Cir.) (employer's termination of female flight attendants who married, but not of male flight attendants who married, violated Title VII), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). This line of cases is inapposite because Continental's weight policy did not operate in favor of a similarly situated group of men.

employer treats persons of one sex differently from similarly situated persons of the other sex on account of their sex. In contrast to a disparate impact case, discriminatory intent must be proven in a disparate treatment case. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977).

The Supreme Court has recently reiterated the allocation of the shifting burdens of proof and production in a disparate treatment case. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). In order to establish a claim of disparate treatment in employment under Title VII, a plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Id.* at 252–53, 101 S.Ct. at 1090–91. The burden is not onerous. *Id.* at 253, 101 S.Ct. at 1093.

Gerdom argued that Continental's weight requirement constituted unlawful disparate treatment because it was imposed on the exclusively female flight hostess position, while similar job positions, predominantly male, were subject to no weight requirement, or at most, to a more lenient requirement.

Gerdom introduced evidence of three arguably similar job positions: pilots, ticket sales agents, and directors of passenger service. Pilots and sales agents have never been subject to any weight requirement, while directors of passenger service did not have to comply with weight requirements until 1969, when Continental imposed a requirement that had more lenient standards and penalties and was enforced more leniently than the regulation which applied to flight hostesses.

While the ease with which working conditions can be compared depends on the similarity between the jobs being compared, a woman is not precluded from alleging disparate treatment even though there are no men employed in her job. *See County of Washington v. Gunther,* 452 U.S. 161, 178–79, 101 S.Ct. 2242, 2252–53, 68 L.Ed.2d 751 (1981) (a disparate treatment Title VII action challenging lower wages for women was not barred even though only women were employed in the lower paid job category); *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). A comparison of somewhat dissimilar jobs is permitted in determining whether a plaintiff has made out a prima facie case of disparate treatment because intent must ultimately be proved. Intent will not be inferred merely from the fact that there are differences in wages or working conditions.

I would conclude that Gerdom's allegation of disparate treatment between flight hostesses and directors of passenger service is sufficient to establish a prima facie case of unlawful disparate treatment.[2] Although Gerdom's allegation and initial offer of proof do not precisely match the four elements of a prima facie case outlined in *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, they are nonetheless sufficient. The Supreme Court explained that the four *McDonnell Douglas* elements need not be applied strictly and that a plaintiff's initial burden is flexible and will depend on the particular circumstances. *Burdine,* 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1093–94 n. 6; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977); *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct.

---

**2.** We confine our discussion here to the director of passenger service position because it is more similar to the flight hostess position than to the pilot or ticket sales agent positions. The directors of passenger service fly on Continental's most competitive routes and assist passengers by making reservations and arranging their connecting flights. Directors of passenger service also serve as in-flight personnel with a great deal of public contact. They are responsible for supervising the flight hostesses during the flights and perform a number of other tasks which differ from those performed by flight hostesses. They also perform some of the same duties performed by flight hostesses. The director of passenger service position involves managerial responsibilities and many directors are promoted into management positions.

at 1824 n. 13. To meet this threshold burden, a plaintiff need only introduce sufficient evidence which, if not rebutted, would support the necessary inference that "it is more likely than not that [the challenged employment decision was] 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), *quoting Teamsters,* 431 U.S. at 358, 97 S.Ct. at 1866 (footnote omitted). "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (footnote omitted).

Because Gerdom met this initial burden, the burden of production shifted to Continental "to articulate some legitimate, non-discriminatory reason" for the difference in treatment. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. An employer does not have to persuade the court that it was actually motivated by the explanation offered. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The burden of production is met if the employer introduces sufficient admissible evidence to raise a genuine issue of fact as to whether it unlawfully discriminated against the plaintiff on the basis of sex. *Id.* at 254–55, 257, 101 S.Ct. at 1094, 1096.

Continental met this burden of production by introducing evidence that the degree of customer contact with flight hostesses dictated that they maintain a more attractive personal appearance.

Once Continental met its burden, the burden of production shifted back to Gerdom and merged with her ultimate burden of persuading the court that Continental's asserted justification was not its true reason, but merely a pretext for discrimination. *Burdine,* 450 U.S. at 253, 256, 101 S.Ct. at 1093, 1095.

Gerdom offered evidence that the amount of customer contact with directors of passenger service was substantially similar or at least not dissimilar enough to justify the disparate treatment of flight hostesses. This offer of proof is sufficient to withstand Continental's motion for summary judgment because it creates a genuine issue of material fact about the ultimate issue in this case, *viz.:* whether Continental intentionally discriminated against women by imposing the stricter weight requirement on the flight hostesses. *See Ramirez v. National Distillers and Chemical Corp.,* 586 F.2d 1315, 1318 (9th Cir.1978).

I believe the majority errs in making a factual comparison between flight hostesses and directors of passenger service. That comparison requires an evaluation of evidence that is precluded on a motion for summary judgment. *Cf. id.* at 1320–21. In my opinion the case should be remanded to the district court for trial, with direction to make this comparison and determine whether the differences justify the disparate treatment of flight hostesses.

An employer cannot avoid a charge of sex discrimination simply by giving different job titles to men and women who are performing the same job. The district court's analysis would focus on the actual duties and function of the job, not on the job title. *See Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 448–49 (D.C.Cir.1976) (the airline's disparate treatment of female flight attendants in comparison with the predominantly male purser position violated Title VII because the duties of the two groups were essentially the same; the pursers had no duties that were not also performed by the flight attendants), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

Because Gerdom established a prima facie case of disparate treatment (which the district court did not consider when it granted summary judgment for Continental), I would remand for further proceedings. On remand Gerdom would have to offer facts to prove the comparability of the positions of flight hostess and director of passenger service in order to carry her ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the

court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See *McDonnell Douglas,* 411 U.S., at 804–805 [93 S.Ct. at 1825–26]. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The majority goes too far in allowing Gerdom the benefit of summary judgment without having had to prove her facts at trial.

## II. CLASS CERTIFICATION

I agree with the majority that the district court abused its discretion by denying Gerdom's motion to certify a class of flight hostesses who had been terminated or suspended for violating Continental's weight requirement. See *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1309 (9th Cir.1977). Most of the Title VII cases involving flight attendants have proceeded as class actions encompassing both terminated and suspended flight attendants. *See, e.g., Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.,* 480 F.Supp. 1107, 1109–10 (E.D.N.Y.1979); *Jarrell v. Eastern Air Lines, Inc.,* 430 F.Supp. 884, 886–87 (E.D.Va.1977), *aff'd per curiam,* 577 F.2d 869 (4th Cir.1978). If Continental's weight requirement violates Title VII, both terminated and suspended flight hostesses are entitled to a remedy. The central issue is common to both groups of flight hostesses.

The other prerequisites of Fed.R.Civ.P. 23 are also satisfied. The numerosity requirement is satisfied by including suspended flight hostesses. Gerdom's claim is typical of the class, and it appears that she would vigorously represent the interests of the class. I would find no merit to Continental's argument that Gerdom's motion for certification was inadequately supported. She did significantly more than mimic the language of Rule 23. See *Doninger,* 564 F.2d at 1309. A hearing should be held to determine which suspended flight hostesses were members of the class during the period in which Title VII's statute of limitations had not yet run.

I would affirm in part, reverse in part and remand.