Lucas ROSA, Plaintiff, Appellant,

v.

PARK WEST BANK & TRUST
CO., Defendant, Appellee.

No. 99–2309.

United States Court of Appeals,
First Circuit.

Heard May 11, 2000.
Decided June 8, 2000.

Jennifer L. Levi, with whom Mary L. Bonauto and Gay & Lesbian Advocates & Defenders were on brief, for appellant.

Robert L. Dambrov, with whom Cooley, Shrair P.C. was on brief, for appellee.

Katherine M. Franke for amici curiae NOW Legal Defense and Education Fund and Equal Rights Advocates.

Before LYNCH, Circuit Judge, CYR, Senior Circuit Judge, and LIPEZ, Circuit Judge.

LYNCH, Circuit Judge.

Lucas Rosa sued the Park West Bank & Trust Co. under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691–1691f, and various state laws. He alleged that the Bank refused to provide him with a loan application because he did not come dressed in masculine attire and that the Bank's refusal amounted to sex discrimination under the Act. The district court granted the Bank's motion to dismiss the ECOA claim, Fed.R.Civ.P. 12(b)(6); concurrently, the court dismissed Rosa's pendent state law claims for lack of subject matter jurisdiction. Rosa appeals and, given the standards for dismissing a case under Rule 12(b)(6), we reverse.

## I.

According to the complaint, which we take to be true for the purpose of this appeal, *see Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 3 (1st Cir.1998), on July 21, 1998, Rosa came to the Bank to apply for a loan. A biological male, he was dressed in traditionally feminine attire. He requested a loan application from Norma Brunelle, a bank employee. Brunelle asked Rosa for identification. Rosa produced three forms of photo identification: (1) a Massachusetts Department of Public Welfare Card; (2) a Massachusetts Identification Card; and (3) a Money Stop Check Cashing ID Card. Brunelle looked at the identification cards and told Rosa that she would not provide him with a loan application until he "went home and changed." She said that he had to be dressed like one of the identification cards in which he appeared in more traditionally male attire before she would provide him with a loan application and process his loan request.

## II.

Rosa sued the Bank for violations of the ECOA and various Massachusetts antidis-

crimination statutes, *see* Mass. Gen. Laws ch. 272, §§ 92A, 98; *id.* ch. 151B, § 4(14). Rosa charged that "[b]y requiring [him] to conform to sex stereotypes before proceeding with the credit transaction, [the Bank] unlawfully discriminated against [him] with respect to an aspect of a credit transaction on the basis of sex." He claims to have suffered emotional distress, including anxiety, depression, humiliation, and extreme embarrassment. Rosa seeks damages, attorney's fees, and injunctive relief.

Without filing an answer to the complaint, the Bank moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the Bank's motion. The court stated:

[T]he issue in this case is not [Rosa's] sex, but rather how he chose to dress when applying for a loan. Because the Act does not prohibit discrimination based on the manner in which someone dresses, Park West's requirement that Rosa change his clothes does not give rise to claims of illegal discrimination. Further, even if Park West's statement or action were based upon Rosa's sexual orientation or perceived sexual orientation, the Act does not prohibit such discrimination.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1988), which Rosa relied on, was not to the contrary, according to the district court, because that case "neither holds, nor even suggests, that discrimination based merely on a person's attire is impermissible."

On appeal, Rosa says that the district court "fundamentally misconceived the law as applicable to the Plaintiff's claim by concluding that there may be no relationship, as a matter of law, between telling a bank customer what to wear and sex discrimination." Rosa also says that the district court misapplied Rule 12(b)(6) when it, allegedly, resolved factual questions.

The Bank says that Rosa loses for two reasons. First, citing cases pertaining to

gays and transsexuals, it says that the ECOA does not apply to crossdressers. Second, the Bank says that its employee genuinely could not identify Rosa, which is why she asked him to go home and change.

### III.

 We review a motion to dismiss de novo. *See Duckworth,* 152 F.3d at 3. In interpreting the ECOA, this court looks to Title VII case law, that is, to federal employment discrimination law. *See Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 893 (1st Cir.1992) (applying the Title VII burden-shifting regime to ECOA); *see also, e.g., Lewis v. ACB Bus. Servs. Inc.,* 135 F.3d 389, 406 (6th Cir.1998) (same). *But see Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712, 713–15 (7th Cir.1998) (rejecting the Title VII burden-shifting model for ECOA). The Bank itself refers us to Title VII case law to interpret the ECOA.

 The ECOA prohibits discrimination, "with respect to any aspect of a credit transaction[,] on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). Thus to prevail, the alleged discrimination against Rosa must have been "on the basis of ... sex." *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The ECOA's sex discrimination prohibition "protects men as well as women." *Id.*

 While the district court was correct in saying that the prohibited bases of discrimination under the ECOA do not include style of dress or sexual orientation, that is not the discrimination alleged. It is alleged that the Bank's actions were taken, in whole or in part, "on the basis of ... [the appellant's] sex." The Bank, by seeking dismissal under Rule 12(b)(6), subjected itself to rigorous standards. We may affirm dismissal "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). Whatever facts emerge, and they may turn out to have nothing to do with sex-based discrimination, we cannot say at this point that the plaintiff has no viable theory of sex discrimination consistent with the facts alleged.

The evidence is not yet developed, and thus it is not yet clear why Brunelle told Rosa to go home and change. It may be that this case involves an instance of disparate treatment based on sex in the denial of credit. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (" 'Disparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their ... sex."); *Gerdom v. Continental Airlines, Inc.,* 692 F.2d 602, 610 (9th Cir. 1982) (en banc), *cert. denied,* 460 U.S. 1074, 103 S.Ct. 1534, 75 L.Ed.2d 954 (1983) (invalidating airline's policy of weight limitations for female "flight hostesses" but not for similarly situated male "directors of passenger services" as impermissible disparate treatment); *Carroll v. Talman Fed. Sav. & Loan Assoc.,* 604 F.2d 1028, 1033 (7th Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1316, 63 L.Ed.2d 762 (1980) (invalidating policy that female employees wear uniforms but that similarly situated male employees need wear only business dress as impermissible disparate treatment); *Allen v. Lovejoy,* 553 F.2d 522, 524 (6th Cir.1977) (invalidating rule requiring abandonment upon marriage of surname that was applied to women, but not to men). It is reasonable to infer that Brunelle told Rosa to go home and change because she thought that Rosa's attire did not accord with his male gender: in other words, that Rosa did not receive the loan application because he was a man, whereas a similarly situated woman would have received the loan application. That is, the Bank may treat, for credit purposes, a woman who dresses like a man differently

than a man who dresses like a woman. If so, the Bank concedes, Rosa may have a claim. Indeed, under *Price Waterhouse*, "stereotyped remarks [including statements about dressing more 'femininely'] can certainly be *evidence* that gender played a part." *Price Waterhouse*, 490 U.S. at 251, 109 S.Ct. 1775. It is also reasonable to infer, though, that Brunelle refused to give Rosa the loan application because she thought he was gay, confusing sexual orientation with cross-dressing.[1] If so, Rosa concedes, our precedents dictate that he would have no recourse under the federal Act. *See Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 (1st Cir.1999). It is reasonable to infer, as well, that Brunelle simply could not ascertain whether the person shown in the identification card photographs was the same person that appeared before her that day. If this were the case, Rosa again would be out of luck. It is reasonable to infer, finally, that Brunelle may have had mixed motives, some of which fall into the prohibited category.

It is too early to say what the facts will show; it is apparent, however, that, under some set of facts within the bounds of the allegations and non-conclusory facts in the complaint, Rosa may be able to prove a claim under the ECOA. *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (stating that the notice pleading permitted by the federal rules requires only " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 72–73 (1st Cir.2000); Fed. R.Civ.P. 8(a).

We *reverse* and remand for further proceedings in accordance with this opinion.

**1.** Massachusetts law, the subject of the pendent state law claims, does prohibit discrimination based on sexual orientation. *See* Mass.

Gen. Laws ch. 272, §§ 92A, 98; *id.* ch. 151B, § 4(14).