DAVIS, Senior Circuit Judge,
concurring:
I concur in Judge Floyd’s fíne opinion. I write separately, however, to note that while I am happy to join in the remand of this matter to the district court so that it may consider G.G.’s evidence under proper legal standards in the first instance, this Court would be on sound ground in granting the requested preliminary injunction on the undisputed facts in the record.
I.
In order to obtain a preliminary injunction, G.G. must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of an injunction, (3) the balance of hardships tips in his favor, and (4) the requested injunction is in the public interest. Pashby v. Delia, 709 F.3d 307, 320 (4th Cir.2013) (citing Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). The record before us establishes that G.G. has done so.
A.
G.G. alleges that by singling him out for different treatment because he is transgender, the Board’s restroom policy discriminates against him “on the basis of sex” in violation of Title IX. In light of the weight of circuit authority concluding that discrimination against transgender individuals constitutes discrimination “on the basis of sex” in the context of analogous statutes and our holding here that the Department’s interpretation of 34 C.F.R. § 106.33 is to be given controlling weight, G.G. has surely demonstrated a likelihood of success on the merits of his Title IX claim. See Price Waterhouse v. Hopkins, 490 U.S. 228, 250-51, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); see also Glenn v. Brumby, 663 F.3d 1312, 1316-19 (11th Cir. 2011); Smith v. City of Salem, 378 F.3d 566, 573-75 (6th Cir.2004); Rosa v. Park W. Bank & Trust Co., 214 F.3d 213, 215-16 (1st Cir.2000); Schwenk v. Hartford, 204 F.3d 1187, 1201-02 (9th Cir.2000).
B.
In support of his claim of irreparable harm, G.G. submitted an affidavit to the district court describing the psychological distress he experiences when he is forced to use the single-stall restrooms or the restroom in the nurse’s office. See J.A. 32-33. His affidavit also indicates that he has “repeatedly developed painful urinary tract infections” as a result of holding his urine in order to avoid using the restroom at school. Id.
An expert declaration by Dr. Randi Ett-ner, a psychologist specializing in working with children and adolescents with gender dysphoria, provides further support for G.G.’s claim of irreparable harm. In her *728 affidavit, Dr. Ettner indicates that treating a transgender boy as male in some situations but not in others is “inconsistent with evidence-based medical practice and detrimental to the health and well-being of the child” and explains why access to a restroom appropriate to one’s gender identity is important for transgender youth. J.A. 39. With respect to G.G. in particular, Dr. Ettner states that in her professional opinion, the Board’s restroom policy “is currently causing emotional distress to an extremely vulnerable youth and placing G.G. at risk for accruing lifelong psychological harm.” J.A. 41. In particular, Dr. Ettner opines that
[a]s a result of the School Board’s restroom policy, ... G.G. is put in the humiliating position of having to use a separate facility, thereby accentuating his ‘otherness,’ undermining his identity formation, and impeding his medically necessary social transition process. The shame of being singled out and stigmatized in his daily life every time he needs to use the restroom is a devastating blow to G.G. and places him at extreme risk for immediate and long-term psychological harm.
J.A. 42.
The Board offers nothing to contradict any of the assertions concerning irreparable harm in G.G.’s or Dr. Ettner’s affidavits. Instead, its arguments focus on what is purportedly lacking from G.G.’s presentation in support of his claim of irreparable harm, such as “evidence that [his feelings of dysphoria, anxiety, and distress] would be lessened by using the boy[s’] restroom,” evidence from his treating psychologist, medical evidence, and an opinion from Dr. Ettner “differentiating between the distress that G.G. may suffer by not using the boy[s’] bathroom during the course of this litigation and the distress that he has apparently been living with since age 12.” Br. Appellee 42-43. As to the alleged deficiency concerning Dr. Ettner’s opinion, the Board’s argument is belied by Dr. Ettner’s affidavit itself, which, as quoted above, provides her opinion about the psychological harm that G.G. is experiencing “[a]s a result of the School Board’s restroom policy.” J.A. 42. With respect to the other purported inadequacies, the absence of such evidence does nothing to undermine the uncontroverted statements concerning the daily psychological harm G.G. experiences as á result of the Board’s policy or Dr. Ettner’s unchallenged opinion concerning the significant long-term consequences of that harm. Moreover, the Board offers no argument to counter G.G.’s averment that he has repeatedly contracted a urinary tract infection as a result of holding his urine to avoid using the restroom at school.
The uncontroverted facts before the district court demonstrate that as a result of the Board’s restroom policy, G.G. experiences daily psychological harm that puts him at risk for long-term psychological harm, and his avoidance of the restroom as a result of the Board’s policy puts him at risk for developing a urinary tract infection as he has repeatedly in the past. G.G. has thus demonstrated that he will suffer irreparable harm in the absence of an injunction.
. C.
Turning to the balance of the hardships, G.G. has shown that he will suffer irreparable harm without the requested injunction. On the other end of the scale, the Board contends that other students’ constitutional right to privacy will be imperiled by G.G.’s presence in the boys’ restroom.
As the majority opinion points out, G.G.’s use. of the restroom does not implicate the unconstitutional actions involved in the cases cited by the dissent. Moreover, students’ unintentional exposure of their genitals to others using the restroom *729 has already been largely, if not entirely, remedied by the alterations to the school’s restrooms already undertaken by the Board. To the extent that a student simply objects to using the restroom in the presence of a transgender student even where there is no possibility that either student’s genitals will be exposed, all students have access to the single-stall restrooms. For other students, using the single-stall restrooms carries no stigma whatsoever, whereas for G.G., using those same restrooms is tantamount to humiliation and a continuing mark of difference among his fellow students. The minimal or non-existent hardship to other students of using the single-stall restrooms if they object to G.G.’s presence in the communal restroom thus does not tip the scale in the Board’s favor. The balance of hardships weighs heavily toward G.G.
D.
Finally, consideration of the public interest in granting or denying the preliminary injunction favors G.G. Having concluded that G.G. has demonstrated a likelihood of success on the merits of his Title IX claim, denying the requested injunction would permit the Board to continue violating G.G.’s rights under Title IX for the pen-dency of this case. Enforcing G.G.’s right to be free from discrimination on the 'basis of sex in an educational institution is plain- ■ ly in the public interest. Cf. Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 521 (4th Cir.2002) (citation omitted) (observing that upholding constitutional rights is in the public interest).
The Board contends that the public interest lies in allowing this issue to be determined by the legislature, citing pending legislation before Congress addressing the issue before the Court. But, as discussed above, the weight of authority establishes that discrimination based on transgender status is already prohibited by the language of federal civil rights statutes, as interpreted by the Supreme Court. The existence of proposed legislation that, if passed, would address the question before us does not justify forcing G.G. to suffer irreparable harm when he has demonstrated that he is likely to succeed on. the merits of his claims under current federal law.
II.
Based on the evidence presented to the district court, G.G. has satisfied all four prongs of the preliminary injunction inquiry. When the record before us supports entry of a preliminary injunction — as it amply does here — we have not hesitated to act to prevent irreparable injury to a litigant before us. See, e.g., League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 248 (4th Cir.2014) (expressly observing that appellate courts have the power to vacate a denial of a preliminary injunction and direct entry of an injunction); Eisenberg ex rel. Eisenberg v. Montgomery Cty. Pub. Schs., 197 F.3d 123, 134 (4th Cir.1999) (directing entry of injunction “because the record clearly establishes the plaintiff’s right to an injunction .and [an evidentiary] hearing would not have altered the result”).
Nevertheless, it is right and proper that we defer to the district court in this instance. It is to be hoped that the district court will turn its attention to this matter with the urgency the case poses. Under the circumstances here, the appropriateness and necessity of such prompt action is plain. By the time the district court issues its decision, G.G. will have suffered the psychological harm the injunction sought to prevent for an entire school year.
With these additional observations, I concur fully in Judge Floyd’s thoughtful and thorough opinion for the panel.